**GATES FORMED FIBRE PRODUCTS, INC., Plaintiff,**

v.

**PLASTI–VAC, INC., Defendant and Cross–Claim Plaintiff,**

and

**Imperial Casualty & Indemnity Company, Defendant and Cross–Claim Defendant.**

**Civ. No. 87–0222–P.**

United States District Court, D. Maine.

June 27, 1988.

Stephen B. Wade, Charles H. Abbott, Auburn, Me., for plaintiff.

John S. Whitman, William W. McCandless Jr., Richardson & Troubh, Portland, Me., for Imperial.

Robert E. Mullen, Linnell, Choate & Webber, Auburn, Me., for Plasti–Vac.

## MEMORANDUM OF DECISION AND ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE

GENE CARTER, District Judge.

Plaintiff, a Colorado corporation with a place of business in Auburn, Maine, bought a thermoforming machine in August of 1985 from Defendant Plasti–Vac, Inc. ("Plasti–Vac"), a North Carolina corporation. Plaintiff intended to use the machine to produce molded trunk inserts for certain General Motors automobiles. The machine was defective, and Plaintiff brought an action in this Court against Plasti–Vac. Imperial Casualty & Indemnity Company ("Imperial"), a Nebraska insurance company which had issued a products liability policy to Plasti–Vac, defended under a reservation of rights. The jury returned a verdict in favor of Plaintiff in the amount of $661,184.99. Almost immediately thereafter, Plaintiff brought this declaratory judgment action, seeking to determine Plaintiff's right to recover the amount of the judgment from Defendant Imperial.

Plaintiff filed a motion *in limine* requesting the Court to find that the underlying insurance contract should be construed pursuant to Maine law. Plasti–Vac has filed a motion in support of Plaintiff's motion. Imperial has also filed a motion *in limine*, asserting that the Court should apply the law of North Carolina. According to Imperial, the choice-of-law decision will affect two substantive issues: the effect of Plasti–Vac's allegedly late notice to Imperial of Plaintiff's products liability lawsuit, and the enforceability of certain exclusions in the policy.[1] For the reasons set forth below, the Court will grant Plaintiff's motion and find that Maine law shall apply.

In a diversity case, a federal court must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). The Law Court set out the Maine choice-of-law rules in *Baybutt Construction Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914 (Me.1983). *See McAllaster v. Bruton*, 655 F.Supp. 1371, 1373 (D.Me.1987). Under the *Baybutt* test, the Court must apply the law of the state which "has the most significant relationship to the transaction and the parties" concerning the issue before the Court. *Baybutt*, 455 A.2d at 918. The rights and duties in a casualty insurance contract

> are to be determined, in the absence of an express effective choice of law by the parties, by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue involved, some other state has a more significant relationship to the transaction and the parties, in which event the local law of the other state will be applied.

1. Imperial contends that Maine courts "have accorded a chilly reception to the late notice defense," while "the law of North Carolina is more favorable to insurers." Imperial also states that Maine has adopted a minority position concerning the exclusions, implying that North Carolina law would be more favorable to insurers on this issue, too.

*Id.* (citing *Restatement (Second) Conflict of Laws* § 193 (1971)).[2]

■ Where, as here, the contract is a multiple risk insurance policy,[3] the *Baybutt* test is varied somewhat. *Id.* at 919; *see also Restatement (Second) Conflict of Laws,* § 193 comment f.

> In a multiple risk policy ..., the authorities have treated such policies in respect to the location of a particular risk in one of the states covered by the contract as if a separate policy had been issued to cover only the risks in that state. The rationale for such a holding is based on the fact that the location of the insurance risk in a particular state pinpoints the jurisdiction that has the greatest interests in the contract and any issues arising therefrom.

*Baybutt,* 455 A.2d at 919. Since the insured risk in *Baybutt* was located in Maine, "the rights of the insured and the responsibility of the insurer under their insurance contract in this case must be determined under Maine law." *Id.* In the case at bar, the parties have made no express, effective choice of law. Thus, the question before the Court is where the risk was located.

An insured risk is "the object or activity which is the subject matter of the insurance," and "has its principal location ... in the state where it will be during at least the major portion of the insurance period." *Restatement (Second) Conflict of Laws* § 193 comment b. The "object ... which is the subject matter of the insurance" in the case at bar is the thermoforming machine. The machine was sold to Plasti–Vac and installed in Maine while new, and remained in Maine during its entire (albeit brief) career. The insured risk was therefore located in Maine.

In its well-argued brief, Imperial asserts that North Carolina's interests outweigh the interests of Maine because the insurance contract was purchased in North Carolina by Plasti–Vac, a North Carolina corporation, through a North Carolina agent. North Carolina's relationship to the matter is not more significant than that of Maine, however. In *Raymond v. Monsanto Co.,* 329 F.Supp. 247 (D.N.H.1971) (Bownes, J.), the court was faced with a similar problem. There, the plaintiff was allegedly injured when the contents of a container of Turtle Wax car polish came in contact with his eyes. *Id.* at 247–48. Defendant Turtle Wax was insured by the Hartford Accident and Indemnity Company ("Hartford"). *Id.* at 248. Before trial, counsel for Hartford filed a petition for tender of policy coverage and for leave to withdraw from trial preparation. *Id.* Turtle Wax's excess liability insurance carrier objected to Hartford's motion, and the determination of whether Hartford could withdraw from trial preparation depended upon the applicability of New Hampshire law or Illinois law. *Id.* at 249. Judge Bownes stated that "the fact that the contract was executed in Illinois does not automatically impose Illinois law." *Id.* He concluded:

> One of the basic principles of contract law is that 'issues relating to details of performance of a contract are determined by the local law of the place of performance.' Restatement of Conflict of Laws 2nd § 206. This insurance contract covers a product sold and distributed on a nationwide basis. Both Hartford and Turtle Wax could reasonably foresee and expect law suits in any of the fifty states. One of the 'details of performance' of any liability insurance contract is the extent of the carrier's duty to defend its policy holder. To hold that the law of the state where the insurance contract happened to be executed is the

2. Section 193 of the Restatement provides:
   The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the

parties, in which event the local law of the other state will be applied.
*Restatement (Second) Conflict of Laws* § 193.

3. The policy allegedly covered liability for damages wherever those damages occurred throughout the United States. The policy was, therefore, a multiple risk policy. *Raymond v. Monsanto Co.,* 329 F.Supp. 247, 249 (D.N.H.1971).

law that controls the defense of a case, regardless of the forum, would be to totally ignore the interests of the separate states in the conduct of litigation properly within their jurisdiction. I rule that since the accident giving rise to these cases took place in New Hampshire, since the plaintiffs are New Hampshire residents, and since the forum is the District of New Hampshire, the extent of Hartford's duty to furnish a defense under the terms of its policy is to be determined in accord with the law of New Hampshire.

*Id.* at 250.[4] Like *Raymond,* the product in the case at bar was sold nationwide, and both Plasti–Vac and Imperial could reasonably foresee and expect law suits in any of the fifty states. Since the machine's failure took place in Maine, Plaintiff's place of business is Maine, and the forum is Maine, the extent of Imperial's obligations under the terms of the policy should be determined in accordance with Maine law.

Maine has other important interests in the case. Plaintiff purchased the machine pursuant to a Maine contract, the damages arose in Maine, and Maine has an interest in ensuring resolution of the case. The mere fact that the insurer was domiciled in Nebraska, or that the insured was domiciled in North Carolina and that the insurance contract was issued in North Carolina, cannot be considered of greater significance than the location of the insured risk, especially where a multiple risk policy is involved. *Baybutt,* 455 A.2d at 918.

Imperial's reliance upon *American Home Assurance Co. v. Libby–Owens– Ford Co.,* 588 F.Supp. 764 (D.Mass.1984), and *Eagle–Picher Industries v. Liberty Mutual Insurance Co.,* 829 F.2d 227 (1st Cir.1987), is misplaced. First, the *Home*

*Assurance* court, applying Massachusetts law, took guidance from what it referred to as "[t]he two principal policies underlying insurance law," rather than applying a test similar to the one set out in *Baybutt.* 588 F.Supp. at 765.[5] The court never even discussed the location of the insured risk. *Id.* Second, unlike the case at bar, the forum state had no interest in the dispute, since the dispute was between citizens of two other states. *Id.* at 766. *Cf. Restatement (Second) Conflict of Law* § 188 (court should apply the law of the state with "the most significant relationship to the transaction *and the parties*" (emphasis added)). Thus, the *Home Assurance* court properly decided to apply the law of Ohio.

The First Circuit opinion in *Eagle–Picher* is also distinguishable, as neither of the parties were domiciled or had places of business in Massachusetts. 829 F.2d at 247–48. The forum state's relationship with the parties was, therefore, insignificant. Second, unlike the case at bar, the risks in *Eagle–Picher* were located outside of the forum. *Id.* at 248. Finally, it appears from the opinion that the court was not even asked to consider applying the law of the forum; the court discussed the relationships of the transaction and the parties to Ohio and Illinois, but did not discuss their relationship to Massachusetts. *Id.*

Accordingly, Plaintiff's Motion *in Limine* is hereby GRANTED; the Court will apply Maine law in construing the insurance contract.

So ORDERED.

---

**4.** Imperial attempts to distinguish *Raymond* from the present case on the grounds that "the [*Raymond*] court was motivated exclusively by concern for its own trial administration." However, the relevant conflict of law issue, as distinct from the underlying substantive question, was the same in *Raymond* as it is in this case: which state has the most significant relationship in a dispute concerning a multiple risk liability insurance policy covering a product sold nationwide where the parties have not agreed to the choice of law. Applying New Hampshire's con-

flict of law rules, which are very similar to Maine's rules, the *Raymond* court found that New Hampshire law should apply where the plaintiff resided in New Hampshire, suffered the injury in New Hampshire, and brought his claim in New Hampshire.

**5.** The two policies enunciated by the *Home Assurance* court are: "(1) prevention of sharp dealing by insurance companies, and (2) protection of expectations of the parties."