**NORTHERN INSURANCE COMPANY OF NEW YORK, Plaintiff–Appellee–Cross–Appellant,**

v.

**ALLIED MUTUAL INSURANCE COMPANY, Defendant–Appellant–Cross–Appellee.**

**Nos. 90–35579, 90–35631.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1992.

Decided Feb. 7, 1992.

A. Richard Dykstra, Stafford Frey Cooper & Stewart, Seattle, Wash., for plaintiff-appellee-cross-appellant.

I. Franklin Hunsaker, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for defendant-appellant-cross-appellee.

Before WRIGHT, NORRIS and HALL, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This is a dispute between two insurance companies over which one must pay the defense costs of a long since dismissed product liability suit. The two insurers present several issues:

1. When liability is transferred by operation of law under a theory of product-line successor liability, do policy benefits arising from insurance on the underlying risk transfer as well? If so, do these benefits include the right to a defense?

2. When two insurers share a common obligation to provide a defense, can one be obligated for defense costs incurred by the other before the first has been tendered the defense?

3. In this dispute, does California or Washington law apply in determining whether the insurers have met their obligation to provide a defense?

I

The Howards sought damages from the makers of California Cooler after their child was born suffering from fetal alcohol syndrome. They claimed that Dawn Howard's consumption of California Coolers during her pregnancy caused the birth defects. After about two years of pretrial litigation, they voluntarily dismissed the suit.

Brown–Forman Corporation bought California Cooler in July 1985, two years after the birth of the Howards' injured child and two years before the Howards filed suit. The sale was executed through an asset purchase agreement. The agreement specified that (1) California Cooler would indemnify Brown–Forman for any product liability claims arising from California Cool-

er's presale activities and (2) Brown–Forman would not assume obligation for any such claims. The agreement also excluded from the sale the assignment of any contract that required consent to assign.

When Brown–Forman received the Howards' complaint in November 1987, it hired the Seattle firm of Preston, Thorgrimson to provide a defense, and then tendered the defense to Northern Insurance Company. Northern sought to have the Lane, Powell firm represent Brown–Forman because Lane, Powell had lower rates. Brown–Forman insisted, however, on retaining Preston, Thorgrimson. Northern acquiesced and Brown–Forman eventually agreed to pay part of the fees.

A few months later, in February 1988, Northern tendered the defense to a second insurer, Allied Mutual. Although Northern had insured California Cooler during the last 12 days of the pregnancy, Allied had provided coverage for the period starting at about the fourth month of pregnancy and ending 12 days before birth. Before Allied responded to Northern's tender, Brown–Forman also tendered the defense to Allied.

Allied accepted the defense under a reservation of rights. It refused, though, to retain Preston, Thorgrimson and instead hired the Betts, Patterson firm. Brown–Forman objected, but eventually agreed to allow Betts, Patterson to participate in the defense with Preston, Thorgrimson.

*Insurance Coverage*

After the Howards dismissed their complaint, Northern brought this action, seeking contribution from Allied for defense costs. On cross motions for summary judgment, the district court ruled that:

1. Although the asset purchase agreement did not transfer Allied's insurance policy to Brown–Forman, Allied nonetheless had a duty to provide Brown–Forman a defense. Liability for presale injuries transferred to Brown–Forman as a matter of law. The court held that the policy benefits transferred with the liability.

2. California law governed the determination of whether Allied had discharged its obligation to provide a defense by hiring Betts, Patterson.

3. Because of the inherent conflict of interest between Allied and its insured, Allied failed to discharge its obligation by refusing to retain Preston, Thorgrimson.

4. Allied was not liable for defense costs incurred before the defense was tendered to Allied.

5. Allied's contribution to Northern for post-tender costs would be determined based on equitable factors, through mandatory arbitration as specified by California law.

Both parties appeal. A summary of the key dates and events follows.

*Howard Lawsuit*

January 1983
(pregnancy begins)

April 4, 1983
(Allied coverage begins)

September 20, 1983
(Allied coverage ends/Northern coverage begins)

October 2, 1983
(injured child's birth)

**July 2, 1985**
**(asset sale transferring California Cooler to Brown–Forman)**

September 20, 1985
(Northern coverage ends)

November 1987
(suit filed/defense tendered to Northern)

February 1988
(Northern tenders to Allied)

March 1988
(Brown–Forman tenders to Allied)

July 1989
(suit dismissed)

---

II

A. *The agreement did not assign the insurance.*

■ Allied argues, and the district court found, that the asset purchase agreement excluded Allied's liability policy from the assets transferred. We agree that the contract as a whole shows that the parties did not intend to transfer the policy.

Although the agreement includes a list of insurance policies transferred to Brown–Forman, it omits any specific reference to the Allied policy. The list does not purport, however, to be complete. In addition, the agreement includes a broad provision that transfers "all of the assets" of California Cooler to Brown–Forman, including "all contracts, ... insurance policies, ... and other binding contracts." The parties limited this broad language with a clause exempting "Excluded Assets."

Included among the "Excluded Assets" are any contracts that require consent to assign. By its terms, Allied's policy required California Cooler to obtain its consent before assigning the policy. Arguably, transferring policy *benefits* arising from presale activity is different from transferring the policy itself, and could have been done without Allied's consent. *See, e.g., Greco v. Oregon Mutual Fire Ins. Co.*, 191 Cal.App.2d 674, 12 Cal.Rptr. 802, 806 (1961). Yet we find little evidence of any intent to transfer these policy benefits. The question then is whether the agreement transferred the policy itself, and we find that given the plain language of

the no assignment clause in Allied's policy, it falls within the agreement's "Excluded Assets".

B. *The policy benefits were transferred by operation of law.*

■ California and Washington, like many other jurisdictions, apply a rule of product-line successor liability. Under this theory, a purchaser of substantially all assets of a firm assumes, with some limitations, the obligation for product liability claims arising from the selling firm's presale activities. Liability is transferred irrespective of any clauses to the contrary in the asset purchase agreement. *See, e.g., Martin v. Abbott Laboratories*, 102 Wash.2d 581, 689 P.2d 368, 384 (1984); *Ray v. Alad Corp.*, 19 Cal.3d 22, 560 P.2d 3, 11, 136 Cal.Rptr. 574 (1977).

The district court found that the right to indemnity arising from California Cooler's policy transferred together with the potential liability. This right to indemnity followed the liability rather than the policy itself. As a result, even though the parties did not assign Allied's policy in the agreement, the right to indemnity under the policy transferred to Brown–Forman by operation of law.

The right to indemnity is, however, of little importance in this case. The Howards failed to obtain an award and there is no indemnity. The key question is whether the right to a defense also followed the liability. The district court held that it did, relying on *Ocean Accident & Guar. Corp. v. Southwestern Bell Tel. Co.*, 100 F.2d 441

**1358**

(8th Cir.), *cert. denied,* 306 U.S. 658, 59 S.Ct. 775, 83 L.Ed. 1056 (1939).

The court in *Ocean Accident* considered a dispute analogous to the one here. Southwestern Bell bought Kansas City Telephone. After the sale, three employees sued for injuries suffered before the sale. Kansas City's insurer, Ocean Accident, refused to pay, contending that it had not consented to an assignment of rights under the policy for presale injuries. (It had consented to an assignment of rights, but the assignment made clear that it applied prospectively, covering only post-sale injuries. *Id.* at 443.) The court nevertheless held that Ocean Accident had to reimburse Southwestern Bell for the loss, including attorneys' fees. *Id.* at 444–45.

We agree with the *Ocean Accident* court that the rationale for honoring "no assignment" clauses vanishes when liability arises from presale activity. *Id.* at 444. Insurers take account of the nature of the insured when issuing a policy. Risk characteristics of the insured determine whether the insurer will provide coverage, and at what rate. An assignment could alter drastically the insurer's exposure depending on the nature of the new insured. "No assignment" clauses protect against any such unforeseen increase in risk. When the loss occurs before the transfer, however, the characteristics of the successor are of little importance: regardless of any transfer the insurer still covers only the risk it evaluated when it wrote the policy. *See generally* Larry D. Gaunt & Numan A. Williams, Commercial Liability Underwriting 277–309 (1978) (noting that the inherent hazard of a product is the most important factor in underwriting and discussing other factors to consider including quality control, the consumer market, claims information and warranties, but not the identity of the company).

The *Ocean Accident* court did not limit its holding to the right to indemnity. It held that Southwestern Bell was entitled to all the rights under the policy, including the right to a defense. *Id.* at 445. It rejected the contention that the personal nature of the relationship between Kansas City and Ocean Accident precluded a transfer of the right to a defense. The cooperation clause of the policy protected Ocean Accident from increased costs should Southwestern Bell prove a reluctant partner in the defense. Ocean Accident did not have to provide a defense if Southwestern Bell failed to satisfy its duty to aid in the defense. Hence, Southwestern Bell was entitled both to indemnity and a defense. *Id.*

Allied argues that to the extent that *Ocean Accident* allows a nonconsensual transfer of defense rights, it should not be followed. Allied contends that unlike potential indemnity liability, defense costs are not quantifiable until the suit is complete. It argues that the particular characteristics of the defendant affect the cost of the defense. Substituting a different defendant may alter substantially defense costs. We disagree.

The nature of the risk, rather than the particular characteristics of the defendant, will have the greater effect on defense costs. The extent and character of the defense will turn on the nature of the product itself and the attributes of the firm that manufactured the product. Aspects of the successor firm could affect the defense, but the shape of the defense will be determined largely by the characteristics of the risk originally insured. Admittedly, defense costs could balloon if the successor firm failed to cooperate in the defense. Inasmuch as the successor firm was not a party to the original policy, the risk of noncooperation arguably increases. Yet, the insurer is protected against this risk because it is freed of its defense obligation if the successor firm does not fulfill its duty to aid in the defense. *See* 14 George J. Couch et al., Couch on Insurance § 51:106 (2d ed. 1985).

█ In short, we find that the benefits of Allied's policy, including the right to a defense, transferred by operation of law to Brown–Forman when Brown–Forman purchased substantially all of California Cooler's assets. Of course, these benefits extend only to coverage for presale occurrences.

## III

The next question is whether Allied fulfilled its duty to provide a defense when it hired Betts, Patterson. Under Washington law, it did; under California law, it did not. California protects insureds by requiring insurers to pay the reasonable costs of independent counsel when a conflict of interest exists between the insured and insurer. Conflicts arise when, as here, the insurer reserves its rights on an issue over which defense counsel exerts some degree of control. *San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y*, 162 Cal.App.3d 358, 208 Cal. Rptr. 494 (1984); *see also* Cal.Civ.Code § 2860 (West Supp.1992) (codifying, with modifications, the *Cumis* rule).

In diversity actions, this court applies the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Washington courts have adopted the Restatement's "most significant relationship" test for resolving choice of law issues in contract disputes. *Potlach No. 1 Federal Credit Union v. Kennedy*, 76 Wash.2d 806, 459 P.2d 32, 34 (1969). The Restatement explains that absent an express choice of law by the parties, the law of the state with the most significant relationship to the transaction and the parties governs. Restatement (second) Conflict of Laws § 188 (1971). The contacts courts should consider include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.

*Id.* The Restatement directs courts to evaluate these contacts according to their relative importance with respect to each issue. *Id.*

These parties negotiated and contracted in California. The insured and the insurer's agent were located in California. But, the injury occurred in Washington, and the Howards brought suit there. According to Allied, California lacks any interest in this case because only Washington is interested in enforcing its ethical rules.

The underlying concern is not, however, the enforcement of ethical rules, but rather the protection of the insured when its interests conflict with those of its insurer. *Cumis*, and now section 2860, accomplishes this by requiring insurers to provide independent counsel when a conflict arises. California has a strong interest in protecting its insureds from the risks inherent in a defense provided under a reservation of rights. *See Cumis*, 162 Cal.App.3d 358, 208 Cal.Rptr. 494, 498 (1984). Applying California law does not harm Washington's interest. Attorneys practicing in Washington still must abide by local ethical rules and may be sanctioned for failing to do so.

Allied argues further that even if California law applies, the fulfillment of the obligation to provide a defense is a mere detail of performance, subject to the law of the place of performance. Restatement (Second) Conflict of Laws § 206 (1971). Whether something constitutes a detail of performance or a substantial right is more a matter of degree than kind. Typical examples of details of performance include the exact time and place of payment and the currency allowed for payment. Substantial rights, on the other hand, include the amount to be paid and whether payment may be withheld under a moratorium statute. *Id.*

Allied relies on *Raymond v. Monsanto Co.*, 329 F.Supp. 247 (D.N.H.1971) and *Gates Formed Fibre Products v. Plastic Vac, Inc.*, 687 F.Supp. 688 (D.Me.1988). Each held that the location of the insured risk rather than the place of contracting determined the law to be applied. But in each case, the state of the insured risk had an interest in having its own law applied. *See* 329 F.Supp. at 249; 687 F.Supp. at 691. Washington has no specific interest in having its more lenient standard applied here. California, on the other hand, has a strong interest in seeing its law applied to protect

both an insured domiciled in California and the substantive rights of parties to a contract negotiated and executed there.

The obligation to provide a defense is one of the two essential promises in the Allied policy. Given the central role this obligation plays in the contract, we find that rules such as the *Cumis* rule, which play a defining role in determining the scope of this obligation, relate to a substantial right rather than a mere detail of performance. We agree with the district court that California law applies and that under California law Allied failed to meet its obligation to provide a defense.

## IV

Allied's policy has a provision precluding reimbursement for defense costs voluntarily incurred before tender. California courts have consistently honored these provisions, and will not require insurers to pay for voluntarily incurred pre-tender costs. *See, e.g., Gribaldo, Jacobs, Jones & Assoc. v. Agrippina Versicherunges A.G.*, 3 Cal.3d 434, 476 P.2d 406, 415, 91 Cal.Rptr. 6 (1970).

Northern argues, though, that a recent California case leaves open the possibility that insurers may be liable for pre-tender costs. In *Fiorito v. Superior Court*, 226 Cal.App.3d 433, 277 Cal.Rptr. 27 (1990), the court reversed the sustaining of a demurrer, explaining that the insured could be entitled to pre-tender defense costs. 277 Cal.Rptr. at 31. Yet the court's decision rested on the possibility that the pre-tender costs were incurred involuntarily. *Id.* In the court's view, if the insured was forced to incur costs before it had time to tender the defense, those costs could be considered involuntarily incurred. The court left intact the normal rule against reimbursement for voluntarily incurred pre-tender costs.

In contrast to *Fiorito*, Northern's costs were incurred voluntarily. This was not an instance in which the defense had to begin before the insured had time to identify the insurer and then tender the defense. In fact, Brown–Forman did just that, except it

identified and tendered to Northern rather than Allied.

■ Allied may nevertheless be liable for expenses Northern incurred before the defense was tendered to Allied. The limitation on reimbursement for voluntarily incurred pre-tender expenses is contractual. It arises solely from the policy itself rather than any general rule of law. In this case, it binds Allied and its insured, but it does not nor can it bind others. Northern was not a party to the original policy; its only relation to Allied is as a later insurer of the same risk. Basic principles of contract law prevent us from applying the contractual limitation against pre-tender expenses to Northern, a stranger to the contract.

■■ Under California law, it is well established that the reciprocal rights of several insurers covering the same risk arise from principles of equity rather than contract. *American Auto. Ins. Co. v. Seaboard Surety Co.*, 155 Cal.App.2d 192, 318 P.2d 84, 86 (1957). California follows the general rule that an insurer that discharges a common obligation of another insurer may seek contribution from the second insurer. *CNA Casualty of Cal. v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 222 Cal.Rptr. 276, 288, *rev. denied*, (1986). The insurers' "respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden." *American Auto. Ins.*, 318 P.2d at 86. No specific rule governs this area of the law. Courts should consider the nature of the claim, the relation of the insured to the insurers, the particulars of each policy and any other equitable considerations. *Id.*

■ In this case, both Northern and Allied covered California Cooler for the type of loss the Howards alleged. Because the injury occurred over time, the consecutive coverage each insurer provided potentially covered the same injury. As insurers of a common obligation, each may seek contribution from the other.

Although California courts have never answered the precise question of whether an insurer such as Allied is liable to anoth-

er insurer for pre-tender defense costs, the question should be resolved by equitable principles and not by the contract between Allied and Brown–Forman. Northern may not succeed in its claim; equitable principles may weigh against reimbursement. For example, the prejudice Allied suffered from the delay in tender may be enough to prevent recovery. Until Northern is allowed to assert its equitable claim, it is impossible to determine whether Northern will succeed.

On the other hand, Brown–Forman's claims against Allied are not governed by equity, but by its contract with Allied. In particular, Allied may not be held liable for that portion of Preston, Thorgrimson's fee Brown–Forman paid. These payments, unlike the payments made by Northern, fall within the contractual provisions in Brown–Forman's policy with Allied precluding reimbursement for pre-tender costs.

We conclude that the district court erred when it applied provisions in Allied's policy with its insured to prevent Northern from asserting its equitable claim. California law requires Northern to resolve its claims through mandatory arbitration, unless the policies provide otherwise. Cal.Civ.Code § 2860(c). On remand, the district court should refer this matter to arbitration as provided in the statute, instructing the arbitrator to consider, under equitable principles, Northern's claims for pre- and post-tender expenses.

The parties will bear their own costs on this appeal.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.