INSURANCE COMPANY OF NORTH AMERICA; Unirisc, Inc., Plaintiffs/Counter–Defendants/Appellees,

v.

SNYDER MOVING AND STORAGE, INC. of Phoenix, Defendant,

David Humphrey, Defendant/Counter–Claimant,

**G.F. Snyder Transfer and Storage, Inc.,**
Defendant/Counter–Claimant/Appellant.

No. 01–15975.

D.C. No. CV–98–01278–HRH.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 11, 2002.

Decided Dec. 6, 2002.

Before BALDOCK,* KLEINFELD, and RAWLINSON, Circuit Judges.

MEMORANDUM**

Defendant G.F. Snyder Transfer and Storage filed an insurance claim for property damage caused by a series of warehouse floods. Plaintiffs Insurance Company of North America (INA) and UNIRISC, Inc., foreign corporations, brought this diversity action seeking a declaration that Snyder's warehouse policies do not provide coverage for the claim. Snyder Transfer filed a counter-claim seeking a declaration that coverage exists. Snyder Transfer timely appeals the district court's grant of summary judgment in favor of the insurers on both claims and the court's denial of its motion for reconsideration.[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 1332. We affirm.

* Honorable Bobby R. Baldock, Circuit Judge for the United States Court of Appeals for the Tenth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. The insurers also named David Humphrey, the owner of the damaged property, and Sny-

der Moving and Storage, the former lessor and operator of the warehouse, as defendants in the declaratory action. The district court granted summary judgment in favor of the insurers on these claims as well. Humphrey and Snyder Moving and Storage did not appeal the district court decision.

## I.

In 1971, Gill Snyder built a warehouse for use by a family-owned corporation, Snyder Moving and Storage, Inc. (Snyder Moving). Snyder Moving was a local agent for Allied Van Lines, a corporation providing moving and storage services primarily for household goods. In March of 1988, Robert S. Rock purchased all of the stock of Snyder Moving, and assumed operation of the warehouse. Gill Snyder retained ownership of the warehouse and leased the property to Rock. Snyder Moving held a Comprehensive Transportation and Storage Liability Policy issued by INA and administered by UNIRISC, Inc. INA renewed the policy on December 1, 1989 for a one-year term.

On August 11, August 14, and September 3, 1990, the warehouse suffered a series of floods that caused extensive damage to stored property. On August 31, 1990, after the first two floods, Snyder Moving unexpectedly ceased operation and relinquished possession of the warehouse. The corporation subsequently filed for Chapter 7 bankruptcy protection. On September 4, 1990, following the final flood, Gill Snyder incorporated G.F. Snyder Transfer and Storage to assume operation of the warehouse. Pursuant to a written agreement, Snyder Transfer acquired the assets of Snyder Moving on October 18, 1990. The parties understood that Snyder Transfer would assume responsibility for flood-related issues, but Snyder Transfer did not formally assume liability. Following the transfer of assets, INA issued a Comprehensive Transportation and Storage Liability Policy to Snyder Transfer. The Snyder Transfer policy, also administered by UNIRISC, Inc., was effective beginning October 18, 1990.

Prior to the floods, David Humphrey contracted with Allied Van Lines to ship and store his household goods. The property was stored at the Snyder warehouse, and Humphrey's household goods were damaged in the 1990 floods. Humphrey was not notified of the floods and was not aware of the damage to his property until he arranged to have the property delivered in August of 1993. Humphrey immediately contacted the warehouse to report the damage. Snyder Transfer turned the matter over to UNIRISC. UNIRISC denied coverage for the floods as "Acts of God."

On August 15, 1995, Humphrey filed suit in state court naming Snyder Transfer as a defendant, asserting various claims including fraud and bailment, and seeking compensation for the property damage and reimbursement of storage fees paid after the floods. Snyder Transfer presented UNIRISC with a copy of Humphrey's suit and demanded representation under its insurance policy. UNIRISC responded with a reservation of rights letter and, on September 6, 1995, UNIRISC and Snyder Transfer entered into a Non–Waiver Agreement. The insurers continued to investigate the issue of coverage and on March 25, 1997, advised Snyder that no coverage existed under the Snyder Transfer policy for the Humphrey claim. The insurers concluded that the damage at issue occurred prior to the policy's October 18th effective date, and that the lawsuit raised claims that would not have been covered by the policy even if it had been in effect. Humphrey subsequently served an alias summons on Snyder Moving in the state court proceeding. Snyder Transfer did not attempt to bring a claim under the Snyder Moving policy.

Prior to resolution of the state court claim, INA and UNIRISC instituted this declaratory relief action seeking a determination that coverage did not exist under either the Snyder Transfer policy or the Snyder Moving policy. The district court concluded that the floods occurred prior to the Snyder Transfer policy period and that

a policy provision excluding "gradual deterioration" excluded coverage for the post-flood deterioration. The court also ruled that Snyder Moving failed to satisfy express claim reporting conditions and thus was not entitled to recovery. Pursuant to Snyder Transfer's motion for reconsideration, the court also concluded that Snyder Moving did not assign rights to insurance benefits under its insurance policy to Snyder Transfer. Snyder Transfer appeals.

## II.

This court reviews de novo a district court's grant of summary judgment. *Clicks Billiards, Inc. v. Sixshooters, Inc.* 251 F.3d 1252, 1257 (9th Cir.2001). Arizona law governs the Court's interpretation of the insurance contract. *Combined Communications Corp. v. Seaboard Surety Co.*, 641 F.2d 743, 744–45 (9th Cir.1981). Arizona law requires that "unclear or ambiguous contracts be construed most favorably to the insured." *Id.* The "ambiguity" rule of construction is applicable only if, after considering the policy provisions, "it is not possible for the court to ascertain the meaning of the language used." *Id.* "Non-ambiguous contracts are construed according to their plain and ordinary meaning." *Id.*

The Snyder Transfer policy limits insurance coverage to property "loss or damage which occurs during the policy period." The policy period began October 18, 1990 and ended October 18, 1991. Although the floods each occurred at least forty-five days prior to the policy's effective date, Snyder Transfer asserts coverage exists for post-flood property damage, such as rust, mold or mildew, to the extent such damage occurred during the policy period.

Snyder Transfer's insurance policy defines an insured "occurrence" as:

an accident that takes place during the period of insurance under this policy, or in the absence thereof, a continuous or repeated exposure during the period of insurance under this policy to conditions which unexpectedly cause loss or destruction or damage to physical property.

Snyder Transfer asserts that coverage exists for the post-flood property damage based on the language providing insurance coverage for property damage from "continuous or repeated exposure" to conditions causing loss or damage.

The proposed construction is contrary to the plain meaning of the insurance contract. The Humphrey property was not subject to "continuous or repeated" exposure to flood waters or any other damaging condition during the policy period. The damage to the Humphrey property was entirely due to floods that occurred on or before September 3, 1990. Although the rust, mold and mildew damage may have worsened due to the property's continued storage at the warehouse, this fact does not establish that the property was exposed to a damaging condition during the policy period, or that any condition "unexpectedly" caused loss, destruction or damage. The policy clearly and unambiguously limits coverage to events or conditions that occurred "during the policy period." The "occurrence" for purposes of establishing coverage under the policy is the initial flooding and not the subsequent property deterioration.

In addition, the Snyder Transfer policy contains the following coverage exclusion:

Perils Excluded: This policy does not insure loss, damage, or expense, nor insure the liability of the named insured for ... insects, moths, vermin, normal wear, tear, or *gradual deterioration.*

(emphasis added). The insurers were aware of the flooding and potential flood damage prior to issuing the Snyder Transfer policy, and introduced uncontested evidence that the provision excluding gradual

deterioration was added specifically to exclude coverage for post-flood damage such as that suffered by the Humphrey property. Given the clear and unambiguous policy provisions limiting coverage, the district court properly concluded that coverage does not exist under the Snyder Transfer policy.

### III.

Snyder Transfer also asserts an issue of material fact exists as to whether Snyder Moving transferred or assigned the warehouse insurance policy to Snyder Transfer. Snyder Transfer raised this issue for the first time in a post-judgment motion to reconsider, filed pursuant to Federal Rules of Civil Procedure 59(e) and 60(b). This Court reviews for an abuse of discretion the district court's denial of a motion for reconsideration. *See Bellus v. United States*, 125 F.3d 821, 822 (9th Cir.1997).[2] A district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact. *United States v. Washington*, 98 F.3d 1159, 1163 (9th Cir.1996).

In the order granting summary judgment, the district court held that Snyder Transfer had no grounds to seek coverage under the Snyder Moving policy because Snyder Transfer had not presented any evidence that the insurers had agreed to extend coverage under the first policy to Snyder Transfer, or that Snyder Moving had assigned or transferred its rights under the policy. In the motion for reconsideration, Snyder Transfer argued for the first time that Snyder Moving had transferred its rights to benefits under the insurance policy. In denying the motion, the district court again found no evidence of an assignment or transfer.

On appeal, Snyder Transfer asserts that the parties to the asset transfer agreement understood that Snyder Transfer would be responsible for any future claims for flood damage, and would be insured under the Snyder Moving policy for any such claims. Snyder Transfer argues that the insurance policy and its benefits were transferred pursuant to the written "Agreement for Purchase." In the Purchase Agreement, Snyder Moving agreed to transfer specific assets listed in an attached addendum. The listed assets included: "All contracts and agreements for storage" and "All accounts receivable." The list did not expressly refer to the insurance contract, or to rights or benefits under the contract.

The Snyder Moving policy contains an anti-assignment clause prohibiting the transfer of the policy without the insurer's consent. Such clauses generally are enforceable under Arizona law. *See Aetna Cas. & Sur. Co. v. Valley Nat. Bank of Ariz.*, 15 Ariz.App. 13, 485 P.2d 837, 839 (1971) ("[L]iability and indemnity insurance policies are regarded as personal contracts and cannot be assigned, especially where an assignment is expressly prohibited by the terms of the policy, unless the insurer consents.") (citations omitted). Snyder Moving arguably could have assigned its rights to insurance benefits under the contract despite the non-assignment clause, however:

> This [non-assignment] rule is based upon the right of the insurer to choose its insured so as to know its risks. Therefore, it is not applicable when an assignment is made by an insured after

---

**2.** The district court's decision to deny a Rule 60(b) motion is reviewed for an abuse of discretion. *Community Dental Services v. Tani*, 282 F.3d 1164, 1167 n. 7 (9th Cir.2002). A denial of a motion for reconsideration under Rule 59(e) is construed as one denying relief under Rule 60(b) and also reviewed for an abuse of discretion. *Barber v. State of Hawaii*, 42 F.3d 1185, 1198 (9th Cir.1994).

the liability-causing event has occurred.... In such a case the general rule is that the assignment is not of the policy itself, but of a claim under, or a right of action on, the policy.

*Id.* (citations omitted); *see also Northern Ins. Co. of N.Y. v. Allied Mutual Ins. Co.,* 955 F.2d 1353, 1357 (9th Cir.1992).

■ To effect a legal assignment of any kind under Arizona law, there must be "evidence of an intent to assign or transfer, ... and the subject matter of the assignment must be described sufficiently to make it capable of being readily identifiable." *Certified Collectors, Inc. v. Lesnick,* 116 Ariz. 601, 570 P.2d 769, 771 (1977) (citations omitted). *See also Britton v. Co-op Banking Group,* 4 F.3d 742, 746 (9th Cir.1993) ("[G]eneral contract principles dictate that to prove an effective assignment, the assignee must come forth with evidence that the assignor meant to assign rights and obligations under the contracts.") (citations omitted). Nothing in the Agreement to Purchase indicates an intent to assign or transfer benefits under the insurance policy. The assets listed in the addendum include specific items such as office equipment and company vehicles, but do not include any reference to the insurance policy or insurance benefits. Nor has Snyder Transfer, through its conduct, provided any evidence to support its argument that an assignment occurred. Prior to the motion for reconsideration, Snyder Transfer never asserted it was an assignee of benefits under the Snyder Moving policy. Snyder Transfer did not file a claim or request that the insurers defend Snyder Moving in the Humphrey litigation. Snyder Transfer allowed a default judgment to be entered against Snyder Moving in both the Humphrey litigation and in the present federal action. At oral argument before the district court, counsel expressly disavowed representing Snyder Moving. Based on this evidence, the district court did not clearly err in

concluding the parties did not demonstrate an intent to transfer benefits under the Snyder Moving policy to Snyder Transfer.

Snyder Transfer also asserts that, as a successor to Snyder Moving, transfer of benefits under Snyder Moving's policy occurred as a matter of law. Snyder also raised this argument for the first time in its motion for reconsideration. Before the district court, Snyder Transfer asserted insurance benefits transferred as a matter of law pursuant to A.R.S. § 29–757 (Governing effects of merger or consolidation). The district court properly concluded that A.R.S. § 29–757 concerns the transfer of assets pursuant to a merger and is not applicable to an asset purchase transaction. On appeal, Snyder Transfer raises a slightly different argument, asserting that "an acquiring company purchasing an ongoing company or its business, whether by stock or asset acquisition, that continues to operate the same business as did its predecessor ... is entitled by law to coverage under the predecessor's insurance policies."

Ordinarily, this Court will not address arguments not raised below. *United States v. Jackson,* 974 F.2d 104, 106 (9th Cir.1992). We note, however, that Snyder Transfer misstates the law. When one company sells or otherwise transfers assets pursuant to an asset purchase agreement, the acquiring company generally does not acquire the liabilities of the transferor unless the purchase agreement expressly provides for the assumption of liability. *See Fletcher Cyclopedia of Private Corp.* § 7122 (2002). Correspondingly, the purchaser generally is not entitled to an interest in an insurance policy issued to the seller unless the purchase agreement expressly provides for the transfer of specific benefits. *See Couch on Ins.* § 34:36 (2002). A few courts have made an exception and found a transfer of benefits when

a prior court imposed successor liability on the purchaser despite terms of the purchase agreement limiting liability. *See, e.g., Northern Ins. Co. of New York v. Allied Mut. Ins. Co.,* 955 F.2d 1353, 1358 (9th Cir.1992) (interpreting California law). Arizona courts have not made such an exception. The current exceptions are limited to product liability and environmental cases where policy concerns support a finding of successor liability. *Fletcher Cyclopedia of Private Corp.* §§ 7122, 7123. Snyder Transfer did not articulate an argument for such an exception in the motion for reconsideration, and the district court did not abuse its discretion in limiting its analysis to the arguments raised in Snyder Transfer's motion.

Also for the first time on appeal, Snyder Transfer asserts that UNIRISC is estopped from raising coverage defenses based on its voluntary participation in the settlement conference. We need not address this argument, but the assertion is without merit. UNIRISC responded to Snyder Transfer's demand for representation with a reservation of rights letter. The letter is clear and unambiguous in reserving the insurer's rights. The insurer's letter prior to the settlement conference effectively preserved its right to contest coverage after the conference. *See Manzanita Park, Inc. v. Ins. Co. of North America,* 857 F.2d 549, 556 (9th Cir.1988).

The district court properly concluded that the Snyder Transfer policy does not provide insurance coverage for the Humphrey claims and properly granted summary judgment in favor of the insurers on this claim. The district court did not

abuse its discretion in denying Snyder Transfer's motion for reconsideration.[3]

Accordingly, the district court orders granting summary judgment and denying reconsideration are AFFIRMED.

---

3. Snyder Transfer also asserts the district court erred in concluding it failed to satisfy mandatory claim reporting requirements and other conditions precedent to recovery under either policy. Because we conclude that Snyder Transfer does not have the right to recover under either policy, we need not address this claim.

