# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 19, 2010

No. 08-50253

Lyle W. Cayce
Clerk

KELLER FOUNDATIONS, INC.; SUNCOAST POST-TENSION, L.P., formerly known as Keller Suncoast L.P.,

Plaintiffs–Appellees,

v.

WAUSAU UNDERWRITERS INSURANCE CO.,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before GARWOOD, GARZA, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Wausau Underwriters Insurance Co. (Wausau) appeals the district court's judgment holding Keller Foundations, Inc. and Suncoast Post-Tension, L.P. (collectively, Keller Companies) are entitled to defense and indemnity under a commercial general liability policy Wausau issued to Travis International, Inc., from whom the Keller Companies acquired certain assets. Because the Keller Companies agreed to assume liability for the particular losses in question and explicitly excluded the Wausau policy from the asset transfer, we reverse.

No. 08-50253

**I**

Keller Foundations entered into a purchase agreement with Travis International, Inc. (Travis) to purchase certain assets and assume certain liabilities from Suncoast Post-Tension, Inc. (Old Suncoast), a Travis subsidiary. After the sale, Old Suncoast changed its name to Travis International Partners, L.P., while the purchasing company, Keller Suncoast, L.P., changed its name to Suncoast Post-Tension, L.P. (New Suncoast).

The purchase agreement transferred all of the assets of Old Suncoast to New Suncoast except for the "Excluded Assets," which included "all . . . insurance policies" other than certain employment benefit plans. The purchase agreement further provided that New Suncoast would "assume and agree to perform, pay and discharge when due the Assumed Obligations," and defined "Assumed Obligations" as:

> other than the Retained Obligations and other than liabilities and operations attributable to operations of Seller after the Closing Date . . . , all liabilities and obligations of Seller whether fixed, accrued, contingent or otherwise, known or unknown, arising prior to, by reason of, or after the consummation of the transactions contemplated by the Transaction Documents including obligations and liabilities . . . (b) arising under any Assumed Contract, . . . (d) for all services and products provided by Seller including obligations and liabilities under warranties arising under contract or law, (e) arising under any applicable law including bulk sale laws . . . .

However, the purchase agreement also stated that "Seller shall retain and be solely responsible for all Retained Obligations," which included specific lawsuits listed in the agreement, as well as other defined liabilities.

Wausau provided Old Suncoast with general liability insurance coverage. Old Suncoast's Wausau policy included a non-assignment clause providing, "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured." Old

No. 08-50253

Suncoast never requested that Wausau transfer coverage under the policy to New Suncoast.

After the sale took place, several lawsuits were filed in Texas, California, and Florida for defects and property damage allegedly arising from Old Suncoast's work prior to the asset purchase and during the term of the Wausau insurance policy. While the suits named various Suncoast Post-Tension entities as defendants, the Keller Companies assumed the defense of all of them consistent with its assumption of liabilities in the purchase agreement. The Keller Companies notified Wausau of the lawsuits, but Wausau refused to provide coverage. As a result, the Keller Companies brought suit against Wausau in Texas state court, alleging breach of contract, violation of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. The Keller Companies sought indemnity for the damages assessed in the underlying suits, as well as reimbursement for the cost of defending the actions.

Wausau removed the case to federal court, where the parties consented to trial by magistrate. The parties filed cross-motions for summary judgment, and the magistrate judge denied Wausau's motion and granted the Keller Companies' motion in part. The magistrate held that Wausau's coverage transferred from Old Suncoast to New Suncoast either as a chose in action with the general transfer of all assets in the purchase agreement or by operation of law. The transfer of the coverage thus obligated Wausau to defend and indemnify New Suncoast and the Keller Companies in the underlying lawsuits. The magistrate further held that the non-assignment clause in the policy did not prohibit such post-loss assignments. Wausau timely appealed.

No. 08-50253

## II

We review a magistrate judge's grant or denial of summary judgment de novo, applying the same standard as the district court.[1]  Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[2]

## III

Wausau challenges the magistrate judge's holding that insurance coverage for the Keller Companies' losses constituted a "chose in action" that was transferred as part of the general catch-all transfer of "all other assets" in the purchase agreement between Old Suncoast and New Suncoast.  Wausau argues that the non-assignment clause in the insurance policy barred the transfer of the policy without prior approval by Wausau.  The Keller Companies contend that Texas courts would not enforce such a non-assignment clause for losses that took place prior to the transfer of the coverage.  We agree with Wausau that the non-assignment clause bars any assignment of the coverage without Wausau's approval, rendering invalid any transfer that might have taken place.

According to *Couch on Insurance*, "the great majority of courts adhere to the rule that general stipulations in policies prohibiting assignments thereof except with the consent of the insurer apply only to assignments before loss, and do not prevent an assignment after loss."[3]  These courts reason that "[t]he purpose of a no assignment clause is to protect the insurer from increased

---

[1] *Cavalier ex rel. Cavalier v. Caddo Parish Sch. Bd.,* 403 F.3d 246, 250 (5th Cir. 2005).

[2] FED. R. CIV. P. 56(c).

[3] 3 COUCH ON INSURANCE § 35:7 (Westlaw 2010).

liability, and after events giving rise to the insurer's liability have occurred, the insurer's risk cannot be increased by a change in the insured's identity."[4]

Texas courts, however, diverge from this majority and enforce non-assignment clauses even for assignments made post-loss. For example, in *Texas Farmers Insurance Co. v. Gerdes*, a Texas court of appeals held that a non-assignment clause barred the post-loss assignment by a third-party beneficiary of her benefits under an insurance policy.[5] There, Sally Gerdes was injured in a car accident with the insured, Bernardo Saldano. Gerdes assigned her right to benefits under Saldano's policy to a chiropractic clinic where she received treatments. The insurance company paid the benefits to Gerdes, who never paid the clinic. The clinic then brought suit against the insurance company.[6] After recognizing that "[n]on-assignment clauses have been consistently enforced by Texas courts," the court held that the non-assignment clause applied to Gerdes and that Gerdes's transfer of her rights under the insurance policy had no effect.[7] Similarly, in *Texas Pacific Indemnity Co. v. Atlantic Richfield Co.*, another Texas court of appeals relied on a non-assignment clause to invalidate a post-loss assignment, holding that "[i]n the absence of a successful attack upon

---

[4] *Id.*; *see also N. Ins. Co. of N.Y. v. Allied Mut. Ins. Co.*, 955 F.2d 1353, 1358 (9th Cir. 1992) (applying California law); *Imperial Enters., Inc. v. Fireman's Fund Ins. Co.*, 535 F.2d 287, 290-92 (5th Cir. 1976) (applying Georgia law); *Peck v. Pub. Serv. Mut. Ins. Co*, 114 F. Supp. 2d 51, 56 (D. Conn. 2000) (citing 3 COUCH ON INSURANCE § 35.7 (3d ed. 1999) and holding that a post-loss assignment "in no way increased the insurer's risks or obligations"); *Int'l Rediscount Corp. v. Hartford Accident & Indem. Co.*, 425 F. Supp. 669, 672-73 (D. Del. 1977) (applying Delaware law); *Conrad Bros. v. John Deere Ins. Co.*, 640 N.W.2d 231, 237-38 (Iowa 2001) (holding that non-assignment clauses only applied to pre-loss assignments, and that the prohibition of post-loss assignments would be "in contravention of public policy and the general purpose of indemnity contracts"); *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 861 N.E.2d 121, 129 (Ohio 2006) ("[T]he chose in action as to the duty to indemnify is unaffected by the anti-assignment provision when the covered loss has already occurred.").

[5] 880 S.W.2d 215, 219 (Tex. App.—Fort Worth 1994, writ denied).

[6] *Id.* at 217.

[7] *Id.* at 218, 219.

No. 08-50253

the anti-assignment clause, Texas Pacific was entitled to have the trial court enforce it."[8]

Additionally, in *Conoco, Inc. v. Republic Insurance Co.*, this court, applying Texas law, enforced a non-assignment clause to invalidate a post-loss assignment and held that the assignee lacked standing to bring a claim against the insurance company.[9] There, Bonanza Corp., the insured, had assigned to Conoco the rights to any insurance proceeds Bonanza might collect from Republic Insurance Co. for the sinking of one of Bonanza's vessels.[10] Conoco then brought suit against Republic Insurance to recover those proceeds. Republic argued that Conoco lacked standing to bring suit because the non-assignment clause in the policy invalidated Bonanza's assignment of its rights.[11] We agreed, recognizing that "Texas law permits the enforcement of no-assignment clauses in insurance policies."[12]

Given these precedents, we believe that Texas courts would enforce the non-assignment clause in the Wausau policy. Thus, no transfer of the insurance coverage for the pre-acquisition losses could have been valid without the consent of Wausau, and it is undisputed that Wausau never consented to such a transfer.

Nor can the Keller Companies circumvent the non-assignment clause by casting the transfer of the insurance coverage as the transfer of a "chose in action." In *Conoco*, we rejected the argument that the non-assignment clause had no effect on the assignment of "proceeds" of insurance rather than a "claim

---

[8] 846 S.W.2d 580, 583 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

[9] 819 F.2d 120, 124 (5th Cir. 1987).

[10] *Id.* at 121.

[11] *Id.* at 123-24.

[12] *Id.* at 124.

6

No. 08-50253

or demand."[13] We called the distinction "specious," stating that "[Conoco] cannot enlarge Bonanza's boots by putting the label 'proceeds' on its claim. Words cannot change a plugged nickel into a silver dollar."[14] The *Texas Pacific* court held likewise, rejecting the argument that the policy limited only assignments of "interests" in the policy and not "fully matured claims based upon the Policy."[15] The distinction the Keller Companies seek is the same as that rejected in *Conoco* and *Texas Pacific Indemnity*.

We also reject the Keller Companies' contention that Wausau must show prejudice in order to enforce the non-assignment clause. The Keller Companies rely on *Hernandez v. Gulf Group Lloyds*, a Supreme Court of Texas case involving a clause in an insurance contract requiring the insured to obtain consent prior to settling any claims.[16] Applying the "fundamental principle of contract law" that only material breach of a contract would excuse the other party from performance, the court held that a breach of the settlement-without-consent clause would only be material if the insurance company could show that it had been prejudiced by the breach.[17] This same requirement for a showing of prejudice has also been extended to clauses requiring prompt notice of a claim.[18] However, unlike settlement-without-consent and notice-of-claim clauses, Texas courts did not require a showing of prejudice in either *Gerdes* or *Texas Pacific*,

---

[13] *Id.*

[14] *Id.*

[15] *Tex. Pac. Indem. Co. v. Atl. Richfield Co.,* 846 S.W.2d 580, 584 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (citing *Conoco*, 819 F.2d at 124).

[16] 875 S.W.2d 691, 692 n.1 (Tex. 1994).

[17] *Id.* at 692-93.

[18] *See Hanson Prod. Co. v. Ams. Ins. Co.*, 108 F.3d 627, 630-31 (5th Cir. 1997) (citing *Hernandez*, 875 S.W.2d at 693); *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636-37 (Tex. 2008).

No. 08-50253

and the Keller Companies have failed to cite any cases indicating that Texas courts intended the *Hernandez* rule to override these cases.  Hence, we do not believe Texas courts would require a showing of prejudice here.

**IV**

Wausau also challenges the magistrate judge's alternative holding that the policy covering Old Suncoast transferred by operation of law when the Keller Companies acquired the assets of Old Suncoast.  The question of whether insurance coverage for pre-acquisition liabilities transfers by operation of law to a purchasing company who assumed those liabilities by contract is one of first impression for Texas courts.

The Keller Companies argue that Texas courts would follow *Northern Insurance Co. of New York v. Allied Mutual Insurance Co.*, a Ninth Circuit case that held that insurance coverage for pre-acquisition losses transferred by operation of law when the liabilities in question were transferred by operation of law.[19]  In *Northern Insurance*, the asset purchase agreement specified that all liability for the selling company's pre-acquisition activities would remain with the selling company, as would any contracts that required consent to assign, including the insurance policy covering the liabilities at issue.[20]  Nevertheless, the court applied California's rule of product-line successor liability, which provides that a purchaser of substantially all assets of a firm assumes the obligation for product liability claims arising from pre-acquisition activities.[21]  The court held that both the liability for the pre-acquisition activities and the insurance coverage for that liability transferred by operation of law to the

---

[19] 955 F.2d 1353, 1358 (9th Cir. 1992).

[20] *Id.* at 1355-56.

[21] *Id.* at 1357.

8

No. 08-50253

acquiring company.[22]   The court disregarded the insurance policy's non-assignment clause, which prevented assignment of the policy without consent. The court reasoned that non-assignment clauses were enforceable because assignments could "alter drastically the insurer's exposure depending on the nature of the new insured," and this rationale "vanishes when liability arises from presale activity," since the characteristics of the successor would not affect that risk.[23]

Subsequent decisions by California state courts raise questions as to the validity of the *Northern Insurance* rule even in California.   At least one California court of appeals has rejected outright the *Northern Insurance* rule.[24] Moreover, the California Supreme Court has refused to extend the *Northern Insurance* rule to instances where the successor corporation assumed liability by contract, as opposed to by operation of law.[25]   In such situations, the court has held that any rights the successor might have in insurance coverage for those liabilities must also come from the contract between the parties.[26]

Other courts have also rejected the *Northern Insurance* rule where the acquiring company assumes liability through contract.   In *Pilkington North America, Inc. v. Travelers Casualty & Surety Co.*, the Ohio Supreme Court rejected the idea that coverage should follow liability, holding that, where

---

[22] *Id.* at 1355-56.

[23] *Id.* at 1358.

[24] *Gen. Accident Ins. Co. of Am. v. Superior Court*, 55 Cal. Rptr. 2d 781, 788 (Cal. Ct. App. 1997) ("We hold that the finding of successor liability in tort does not entitle the successor corporation, by operation of law, to the insurance coverage of its corporate predecessor. . . . The law can impose tort liability on a successor corporate entity; it cannot impose a contractual insurance relationship between an insurer and a stranger to the insurance contract.").

[25] *Henkel Corp. v. Hartford Accident & Indem. Co.*, 62 P.3d 69, 73-74 (Cal. 2003).

[26] *Id.* at 74 ("[W]hen liability is assumed by contract, the successor's rights are defined and limited by that contract.").

liability is assumed contractually, allowing indemnity to follow liability as a matter of law would interfere with the parties' ability to contract to control liability or assign liability while preserving rights under the policy for the original insured.[27]   The court also noted that "if coverage were to arise by operation of law and the original insured remains in operation, the limits of its coverage available under the policy may be reduced by any indemnity payments made on behalf of the additional insured," and "the insurer may be placed in the position of defending an additional insured where there was only one under the policy."[28]  Washington and Hawaiian state courts have held similarly.[29]

    We believe that Texas courts would reject the *Northern Insurance* rule where, as here, the liabilities in question were assumed through a contract that also specifically excluded the transfer of the insurance policy covering those liabilities.  Unlike California, Texas law does not have a product-line successor liability rule.  Texas statutes specifically provide that a purchase of all or substantially all of the property or assets of another corporation "does not make the acquiring corporation . . . responsible or liable for any liability or obligation of the selling corporation that the acquiring corporation . . . did not expressly assume."[30]

---

[27] 861 N.E.2d 121, 130-31 (Ohio 2006).

[28] *Id.* at 131.

[29] *See Del Monte Fresh Produce (Haw.), Inc. v. Fireman's Fund Ins. Co.*, 183 P.3d 734, 745 (Haw. 2007) (holding that an assignment of an insurance policy by operation of law to a party who acquired liabilities through contract was inconsistent with Hawaiian law's requirement that insurance policies be subject to general rules of contract interpretation); *Unigard Ins. Co. v. Leven*, 983 P.2d 1155, 1164 (Wash. Ct. App. 1999) (refusing to extend the *Northern Insurance* rule to "nonsuccessors who voluntarily enter into partial indemnification agreements in exchange for substantial personal compensation").

[30] TEX. BUS. CORP. ACT ANN. art. 5.10(B) (Vernon 2007); *see also Griggs v. Capitol Mach. Works, Inc.*, 690 S.W.2d 287, 294 (Tex. App.—Austin 1985, writ ref'd n.r.e.) (rejecting the product successor theory of liability).

No. 08-50253

Moreover, Texas's enforcement of non-assignment clauses in insurance agreements for post-loss assignments further suggests that Texas courts would reject the *Northern Insurance* rule, since the unenforceability of such a clause served as an important factor in the Ninth Circuit's decision in *Northern Insurance*.[31]   Given its focus on contracts in the insurance context, we believe Texas would enforce the contract between Old Suncoast and New Suncoast as written.   The purchase agreement between Old Suncoast and New Suncoast specifically excluded the Wausau policy covering the assumed liabilities from the transfer of assets. The parties clearly intended for the insurance coverage to remain with Old Suncoast and Travis.   We see no reason why Texas courts would interfere with the parties' ability to enter into such a contract.

*         *         *

We REVERSE the district court's grant of partial summary judgment in favor of the Keller Companies and RENDER summary judgment in favor of Wausau.

---

[31] *See N. Ins. Co. of N.Y. v. Allied Mut. Ins. Co.*, 955 F.2d 1353, 1358 (9th Cir. 1992).

11