Opinion
 

 JONES, J.
 

 This mandate proceeding raises the question whether a finding of corporate successor liability for asbestos torts entitles the liable successor, as a matter of law, to the insurance coverage of the predecessor corporation. We hold the successor corporation is not entitled by operation of law to the predecessor’s insurance coverage.
 

 Petitioners are three insurance companies who are defendants in an action for declaratory relief in which plaintiff Western MacArthur Company, real party herein, seeks a judicial determination that petitioners have duties to defend and indemnify Western MacArthur in personal injury actions arising from asbestos torts. Well over a decade ago, Western MacArthur was found to be the successor corporation to Western Asbestos Company for purposes
 
 *1446
 
 of product liability, and thus became liable in tort for injuries arising from Western Asbestos’s distribution of asbestos products. This court affirmed the finding of successor liability.
 
 (Kaminski
 
 v.
 
 Western MacArthur Co.
 
 (1985) 175 Cal.App.3d 445 [220 Cal.Rptr. 895]
 
 (Kaminski).)
 
 Subsequently, Western MacArthur filed this action for declaratory relief against petitioners, who insured Western Asbestos before the corporate takeover. Western MacArthur claims a right to Western Asbestos’s insurance coverage by operation of law. Petitioners moved for summary judgment on the ground that petitioners had only insured Western Asbestos, not Western MacArthur, and Western MacArthur had confused tort liability with the contractual relationship of insurer and insured. The superior court denied the motion, ruling that the Western Asbestos insurance coverage transferred to Western MacArthur by operation of law as a consequence of the finding of successor tort liability. We disagree. We conclude a finding of successor liability in tort does not create from whole cloth an insurance relationship between strangers, and insurance coverage under these circumstances does not transfer by operation of law. Accordingly, we issue the peremptory writ.
 

 I. Facts
 

 The story of this case begins at the turn of the century. The 12-year-old
 
 Kaminski
 
 decision serves as a useful reference work.
 

 “The Western Asbestos Company . . . was formed in the early 1900’s, and became a Bay Area distributor of Johns-Manville asbestos products in 1930 or 1932. The company established a reputation as a reliable business. By 1965, it was suffering financial setbacks and was in urgent need of operating capital.”
 
 (Kaminski, supra,
 
 175 Cal.App.3d at p. 451.)
 

 “Rather than dissolve the corporation and lose everything, [Western Asbestos’s] three stockholder-directors . . . contacted ... the MacArthur Company of St. Paul, Minnesota .... with an offer to sell Western [Asbestos] to MacArthur [Company]. MacArthur [Company] distributed building materials, owned a subsidiary which distributed Johns-Manville asbestos products, and had maintained a relationship with the Johns-Man-ville Company dating back to the early 1900’s. MacArthur [Company] eventually became the parent corporation to Western MacArthur Company. . . .”
 
 (Kaminski, supra,
 
 175 Cal.App.3d at p. 451.)
 

 Between 1965 and 1967, Western MacArthur took over Western Asbestos in such a fashion that Western MacArthur was subsequently found by the Alameda County Superior Court to be liable for Western Asbestos’s torts as a successor corporation under
 
 Ray
 
 v.
 
 Alad. Corp.
 
 (1977) 19 Cal.3d 22 [136
 
 *1447
 
 Cal.Rptr. 574, 560 P.2d 3]
 
 (Ray
 
 v.
 
 Alad).
 
 Western MacArthur assumed all of Western Asbestos’s contracts and retained 45 of its 50 employees.
 
 (Kaminski, supra,
 
 175 Cal.App.3d at p. 453.) “Western MacArthur used Western’s [Asbestos’s] customer lists in conducting its new business. Western MacArthur sent a letter to Western [Asbestos] customers asking if it may ‘continue to serve’ them, stressing that the new company had ‘the same experienced personnel’ and offered ‘the same products, engineering and contracting services.’ ”
 
 (Ibid)
 

 “Western MacArthur continued to supply the same products and services as Western [Asbestos]. It employed the same sales personnel, warehouse-men, truck drivers, and estimators. Johns-Manville remained the primary supplier, and the product line and shipyard work remained essentially unchanged. Orders addressed to ‘Western Asbestos’ were filled by Western MacArthur. Western MacArthur capitalized on Western’s [Asbestos’s] reputation. Prior to the formation of Western MacArthur, people referred to ‘Western Asbestos’ as ‘Western’; the verbal shortform continued to be used in reference to ‘Western MacArthur.’ ”
 
 (Kaminski, supra,
 
 175 Cal.App.3d at p. 453.)
 
 [1]
 

 The trial court in
 
 Kaminski
 
 imposed successor liability upon Western MacArthur for Western Asbestos’s product liability torts, finding that “ ‘the business being conducted by Western MacArthur when it opened its doors in June, 1967, was virtually the same as the business which Western Asbestos had been conducting through May, 1967,’ and that ‘under the facts of this case Western MacArthur should bear the burden for defective products sold or distributed by Western Asbestos.’ ”
 
 (Kaminski, supra,
 
 175 Cal.App.3d at p. 455.)
 

 In
 
 Kaminski,
 
 we applied the rule of
 
 Ray
 
 v.
 
 Alad
 
 to the Western MacArthur takeover and affirmed the trial court’s decision.
 
 Ray
 
 v.
 
 Alad
 
 sets forth a narrow exception to the rule against successor liability for a predecessor corporation’s torts. It permits successor liability for the defective products of a predecessor corporation where (1) the successor’s takeover of the predecessor virtually destroys the plaintiff’s remedies against the predecessor; (2) the successor corporation is able to assume the predecessor’s risk-spreading role; and (3) the successor’s enjoyment of the benefit of the predecessor’s good will makes it fair to impose the burden on the successor of responsibility for the predecessor’s defective products.
 
 (Kaminski, supra,
 
 175 Cal.App.3d at p. 454; see
 
 Ray
 
 v.
 
 Alad, supra,
 
 19 Cal.3d at p. 31.)
 

 Kaminski
 
 concluded: “Western MacArthur[] succeeded to the operations, goodwill, customer lists, and a name similar to ‘Western Asbestos.’ The
 
 *1448
 
 essence of the takeover resulted in the transfer of assets and goodwill sufficient to enable Western MacArthur to capitalize on its predecessor’s industry and reputation and continue distribution of Johns-Manville asbestos products. . . . [T]he transaction . . . caused or at least substantially contributed to the absence of Western [Asbestos] from the recovery pool of product liability plaintiffs, and the destruction of . . . Kaminski’s remedies against it.”
 
 (Kaminski, supra,
 
 175 Cal.App.3d at p. 458.)
 

 In the aftermath of
 
 Kaminski,
 
 Western MacArthur was sued in thousands of cases for asbestos-related injuries traceable to Western Asbestos products. When its own policy limits (approximately $90 million) ran out, Western MacArthur sought the insurance coverage which had been issued to Western Asbestos prior to the takeover. Petitioners General Accident Insurance Company of America, United States Fidelity & Guaranty Company, and Argonaut Insurance Company purportedly issued comprehensive general liability insurance policies (CGL) to Western Asbestos from 1948 to 1967.
 
 [2]
 
 Petitioners had never insured Western MacArthur, and refused that entity’s request for coverage.
 

 Western MacArthur then commenced the instant proceeding in declaratory relief, naming petitioners as defendants. Its complaint alleges the existence of the 1948-1967 Western Asbestos CGL policies, on information and belief. The complaint further alleges that copies of the policies have not yet been located but, again on information and belief, the policies were “identical or substantially similar” to standard-form policies. The Western Asbestos policies allegedly had provisions similar to the standard-form clauses providing coverage for an “occurrence,” defined to include “injurious exposure to conditions” resulting in injury.
 

 Western MacArthur further alleges that it has 2,000 asbestos-related injury claims against it, and has “closed or settled” 8,000 more. These 10,000 claims have resulted in the expenditure of $93 million, a figure which approximates Western MacArthur’s own insurance coverage. Western MacArthur, which continued to distribute asbestos products after 1967, does not specifically allege that all 10,000 claims are traceable only to Western Asbestos products. Rather, Western MacArthur describes itself as “ha[ving] been sued in thousands of cases” for injuries from Western Asbestos products. The complaint never specifically articulates a theory on which the insurers are obligated to defend and indemnify Western MacArthur, a party they did not insure.
 

 
 *1449
 
 Petitioners moved for summary judgment on Western MacArthur’s complaint, arguing that there was no insured-insurer contractual relationship between them and Western MacArthur, and that Western Asbestos’s insurance coverage did not transfer to Western MacArthur by operation of law by virtue of the finding of successor liability affirmed in
 
 Kaminski.
 
 Western MacArthur opposed the motion by arguing that the insurance policies were transferred by operation of law. In addition, Western MacArthur urged two alternative theories in favor of coverage: (1) that there was an express assignment of the Western Asbestos policies by virtue of a June 1967 security agreement executed by Western MacArthur and MacArthur Company; and (2) the takeover of Western Asbestos amounted to a de facto merger.
 

 The superior court denied petitioners’ motion. After noting it was undisputed the insurance policies, if any, were issued to Western Asbestos, not Western MacArthur, and the latter was held to be the corporate successor of the former, the superior court relied on
 
 Northern Ins. Co. of New York
 
 v.
 
 Allied Mut. Ins.
 
 (9th Cir. 1992) 955 F.2d 1353
 
 (Northern Ins.)
 
 for the proposition that “The benefits of a predecessor’s insurance policy may transfer as a matter of law to a successor corporation if liability for a predecessor’s activity transferred as a matter of law under a product liability successor theory.” The superior court did not reach the issues of express assignment or de facto merger.
 

 This petition followed.
 

 II. Discussion
 

 In essence, petitioners contend that because insurance is a matter of contract, coverage cannot transfer as a matter of law by virtue of a finding of tort liability. Western MacArthur insists that Western Asbestos’s coverage must transfer due to the finding of successor liability for product liability torts. In so doing Western MacArthur relies almost entirely on
 
 Northern Ins., supra,
 
 955 F.2d 1353. We disagree with that case and decline to follow its holding.
 

 The
 
 Northern Ins.
 
 court characterized the case before it as “a dispute between two insurance companies over which one must pay the defense costs of a long since dismissed product liability suit.” (955 F.2d at p. 1355.) Plaintiffs, a married couple, sued California Cooler, a maker of wine coolers, for damages suffered when their child was bom with fetal alcohol syndrome after the mother consumed the alcoholic wine coolers while pregnant. Roughly two years after the child’s birth, and two years before the plaintiffs filed suit, Brown-Forman Corporation acquired California Cooler through an asset-purchase agreement.
 
 (Ibid.)
 
 The agreement provided that “California
 
 *1450
 
 Cooler would indemnify Brown-Forman for any product liability claims arising from California Cooler’s presale activities. . . .”
 
 (Id.
 
 at pp. 1355-1356.)
 

 Allied Mutual had insured California Cooler from the fourth month of the pregnancy until 12 days before birth; Northern Insurance started coverage on the 12th day before the child was delivered, and its coverage continued until well after the Brown-Forman takeover.
 

 After two years of pretrial litigation, plaintiffs voluntarily dismissed their suit. The two insurers disputed their individual liability for defense costs. Northern Insurance commenced an action in federal district court for declaratory relief. Allied Mutual apparently argued that its policy, which covered virtually the entire third trimester, was not available to Brown-Forman despite the fact that two years after the birth Brown-Forman acquired California Cooler. Allied Mutual contended that Northern Insurance, despite. its scant fortnight of fetal coverage, was left solely responsible for defense costs.
 

 The Ninth Circuit disagreed. Although it first noted that the asset-purchase agreement did not assign the Allied policy to Brown-Forman, the court found the Allied policy was available to Brown-Forman by operation of law. The court ruled that under both California and Washington law “a purchaser of substantially all assets of a firm assumes, with some limitations, the obligation for product liability claims arising from the selling firm’s presale activities. Liability is transferred irrespective of any clauses to the contrary in the asset purchase agreement. [Citation.]”
 
 (Northern Ins. Co. of New York
 
 v.
 
 Allied Mut. Ins., supra,
 
 955 F.2d at p. 1357.) The court then proceeded to the crux of its holding, a paragraph devoid of authority: “The district court found that the right to indemnity arising from California Cooler’s [Allied Mutual] policy transferred together with the potential liability. This right to indemnity followed the liability rather than the policy itself. As a result, even though the parties did not assign Allied’s policy in the agreement, the right to indemnity under the policy transferred to Brown-Forman by operation of law.”
 
 (Northern Ins. Co. of New York
 
 v.
 
 Allied Mut. Ins., supra,
 
 955 F.2d at p. 1357.)
 

 After this paragraph the Ninth Circuit proceeded to discuss the “analogous” case of
 
 Ocean Accident & Guar. Corp.
 
 v.
 
 Southwestern B. Tel. Co.
 
 (8th Cir. 1939) 100 F.2d 441 [122 A.L.R. 133]
 
 (Ocean Accident),
 
 a case involving a “no assignment” clause.
 
 Ocean Accident
 
 is not analogous at all: That case involved an express assignment of an insurance policy by one company to its successor. The issue in
 
 Ocean Accident
 
 was whether the policy’s “no
 
 *1451
 
 assignment” clause, requiring the consent of the insurer, was applicable when the loss at issue—employee injury—occurred prior to the corporate takeover. The Eighth Circuit held the clause was inapplicable, and insurer consent not required, because insurance coverage for preexisting loss was assignable in the manner of an existing cause of action. (100 F.2d at p. 446.)
 

 Simply put,
 
 Ocean Accident
 
 does not provide authority for the
 
 Northern Insurance
 
 proposition that insurance coverage transfers by operation of law by the finding of successor liability for product liability torts. An insured-insurer relationship is a matter of contract. Successor liability is a matter of tort duty and liability. It is one thing to deem the successor corporation liable for the predecessor’s torts; it is quite another to deem the successor corporation a party to insurance contracts it never signed, and for which it never paid a premium, and to deem the insurer to be in a contractual relationship with a stranger.
 

 California law on this issue is sparse but favors petitioners. In
 
 Oliver Machinery Co.
 
 v.
 
 United States Fid. & Guar. Co.
 
 (1986) 187 Cal.App.3d 1510 [232 Cal.Rptr. 691], the Court of Appeal dealt with a question of insurance contract interpretation in the context of a corporate takeover. Oliver Machinery Company distributed woodworking machines manufactured by Rankin Brothers Manufacturing Company. Rankin was succeeded by Pal Industries when the latter purchased its assets. After the takeover, United States Fidelity and Guaranty Company (USF&G) issued a comprehensive general liability policy to Pal Industries, with Oliver as an additional insured, insuring Oliver with regard to “ ‘Distribution or Sale in the Regular Course of [Oliver’s] Business of the
 
 Named Insured’s
 
 Products.’ ” (187 Cal.App.3d at p. 1516, italics added.) The plaintiff was then injured by a woodworking machine manufactured by Rankin and distributed by Oliver
 
 before
 
 the corporate takeover and the issuance of the policy.
 

 Oliver sought coverage for and defense against plaintiff’s suit under the USF&G policy of the successor corporation, Pal Industries, arguing the Rankin-made machine was a “named insured’s product” because all Rankin products were now marketed by Pal Industries. The Court of Appeal, upholding the trial court, held the machine manufactured by Rankin, long before the takeover by Pal Industries, was not a “named insured’s product” under the policy, because that language referred to “products manufactured by Pal [Industries] and not by its predecessor Rankin.”
 
 (Oliver Machinery Co.
 
 v.
 
 United States Fid. & Guar. Co., supra,
 
 187 Cal.App.3d at pp. 1516-1517.)
 

 The court also rejected Oliver’s argument that insurance coverage for a Rankin product should follow the product because of the fact Pal was a
 
 *1452
 
 successor corporation of Rankin under
 
 Ray
 
 v.
 
 Alad.
 
 “We decline to extend
 
 [Ray
 
 v. Alad's] narrow exception [to the rule against] successor liability to insurance coverage for sellers of products which were manufactured by a predecessor company. Coverage is a question of contract interpretation and the duty to defend is based on the subject insurance cont[r]act. [Citation.] In successor liability cases, such as [Ray v.]
 
 Alad,
 
 the person injured is not in a contractual relationship with the manufacturer and generally cannot protect himself or herself from the eventuality of injury from a product manufactured by a predecessor company. Here the distributor Oliver was a party to the insurance contract and could have purchased independent insurance for its liability for products it sold which were manufactured by the predecessor company or could have amended the policy in question to cover liability for these products.”
 
 (Oliver Machinery Co.
 
 v.
 
 United States Fid. & Guar. Co., supra,
 
 187 Cal.App.3d at pp. 1517-1518, fn. omitted.)
 

 The Ninth Circuit did not cite or discuss
 
 Oliver Machinery
 
 in
 
 Northern Ins.
 

 Two years after
 
 Northern Ins.,
 
 the Court of Appeal decided
 
 Quemetco, Inc.
 
 v.
 
 Pacific Automobile Ins. Co.
 
 (1994) 24 Cal.App.4th 494 [29 Cal.Rptr.2d 627]
 
 (Quemetco). Quemetco
 
 involved these facts:
 
 [3]
 
 a company known as Quemetco, Inc., deposited hazardous wastes at certain acid pits in Riverside County. This company, referred to in the
 
 Quemetco
 
 opinion as “Old Quemetco,” had comprehensive general liability policies from Pacific Automobile Insurance Company and other insurers. “Old Quemetco” sold all of its assets to a corporation which subsequently changed its name to Quemetco, Inc. This new, successor corporation is referred to as “New Quemetco.” New Quemetco never dumped any hazardous wastes. However, New Quemetco was later sued for damages caused by Old Quemetco’s hazardous waste dumping. New Quemetco was sued in state court by private parties and in federal court by the United States government acting under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA).
 

 New Quemetco filed a declaratory relief action seeking coverage from Old Quemetco’s insurers. The superior court granted the insurers’ motion for summary judgment, on the ground that the insurers had issued their policies to the predecessor corporation, Old Quemetco, not the successor corporation, New Quemetco. The superior court specifically rejected New Quemetco’s contention that the Old Quemetco policies were transferred to New Quemetco as a matter of law upon the asset sale.
 

 On the issue of transfer by operation of law, the
 
 Quemetco
 
 majority affirmed. The majority drew “some guidance” from
 
 Oliver Machinery
 
 
 *1453
 
 (Quemetco,
 
 Inc.
 
 v.
 
 Pacific Automobile Ins. Co., supra,
 
 24 Cal.App.4th at p. 499), quoting the passage quoted
 
 ante
 
 (p. 1452) regarding the distinction between coverage by insurance contract and liability in tort. “[Although
 
 Oliver
 
 dealt with a successor’s policy as opposed to a predecessor’s policy, the court refused to extend the rule for determining liability to the issue of insurance coverage, instead preferring to look to the contract itself to resolve the issue of coverage.”
 
 (Quemetco, supra,
 
 at p. 500.)
 
 [4]
 

 Other decisions are closer to
 
 Quemetco
 
 than
 
 Northern Ins.,
 
 if only by analogy. In
 
 Cooper Companies
 
 v.
 
 Transcontinental Ins. Co.
 
 (1995) 31 Cal.App.4th 1094 [37 Cal.Rptr.2d 508], Division Two of this appellate district held that policies covering corporations “hereafter acquired” by the insured do not cover corporations acquired after the expiration of the policy period. The court observed that the insurance policy at issue was a matter of contract, and a specific premium was paid for the insurance of a single corporation. The court concluded it would be an unreasonable expectation under the policy language to extend coverage to newly acquired corporations acquired after the expiration of the policy period. (Accord,
 
 Total Waste Management
 
 v.
 
 Commercial Union Ins. Co.
 
 (D.N.H. 1994) 857 F.Supp. 140, 149.)
 

 In Armstrong World Industries, Inc.
 
 v.
 
 Aetna Casualty & Surety Co.
 
 (1996) 45 Cal.App.4th 1 [52 Cal.Rptr.2d 690], Division One of this appellate district reached the same conclusion, observing that “. . . a corporate acquisition taking place after the policy has expired can have no retroactive effect on the identity of the named insured during the policy period.”
 
 (Id.
 
 at p. 80, fn. omitted.)
 

 In
 
 A.C. Label Co.
 
 v.
 
 Transamerica Ins. Co.
 
 (1996) 48 Cal.App.4th 1188 [56 Cal.Rptr.2d 207], the Sixth Appellate District followed
 
 Cooper Companies.
 
 The insured in
 
 A.C. Label
 
 sought CGL coverage for property damage which occurred during the policy period; however, the damaged property was not acquired by the insured until after the policy expired. The majority held: “Liability insurance coverage cannot be created after the fact. The coverage provided by [the] CGL policy was not triggered during the policy period because [the insureds] had no connection to or nexus with the damage caused by contamination that occurred on the subsequently acquired property during the policy period. . . . Any expectation that [the insureds] may have had that this liability insurance policy would apply to after-acquired
 
 *1454
 
 liability with which they had no connection during the policy period was unreasonable as a matter of law and therefore cannot support an interpretation of this policy in favor of coverage.” (48 Cal.App.4th at p. 1194.)
 

 In language that resonates closely with petitioners’ position here, the court continued: “[The insureds’] argument that public policy supports extending coverage ... is equally unsupportable. If coverage could be created by after-the-fact transfer of liability to an insured, an insured could contrive to make an insurer responsible for the liability of a
 
 third party
 
 by simply acquiring that liability long after damage attributable to the third party had already occurred simply because of the happenstance that the
 
 insured,
 
 as opposed to the third party, had been covered by a CGL policy at the time of the damage. Such an unlimited extension of coverage would permit a party that was responsible for damage to force the insurer of
 
 another
 
 to ‘share’ that responsibility by simply transferring the party’s accrued liability to an insured. Insurance companies could then be drawn into litigation notwithstanding the facts that they had not insured any of the parties that were liable for the damage when it occurred. The insurer’s ability to assess risks would be seriously undermined.” (A.C.
 
 Label Co.
 
 v.
 
 Transamerica Ins. Co., supra,
 
 48 Cal.App.4th at pp. 1194-1195.)
 

 We hold that the finding of successor liability in tort does not entitle the successor corporation, by operation of law, to the insurance coverage of its corporate predecessor. Accordingly, the superior court erred by denying petitioners’ motion for summary judgment on the basis of
 
 Northern Ins.
 

 [5]
 

 The relevant appellate authority supports petitioners’ argument that a transfer by operation of law is a violation of the basic principles of contract and is also bad public policy. Under the superior court’s order, an insurer which was never a party to an insurance contract would be held liable to an “insured”
 
 *1455
 
 that has never paid a premium or been subjected to an underwriting analysis. The law can impose tort liability on a successor corporate entity; it cannot impose a contractual insurance relationship between an insurer and a stranger to the insurance contract.
 

 We note that it remains to be proven whether there has been an express assignment of the Western Asbestos policies to Western MacArthur. The superior court did not reach the issue of express assignment, or the third issue of de facto merger, in its summary judgment ruling. While petitioners meritoriously contend below their policies did not transfer to Western MacArthur by operation of law, Western MacArthur has two remaining theories on which it may legitimately attempt to defeat petitioners’ summary judgment motion. Upon remand, the superior court shall proceed to determine the summary judgment motion on the issues of express assignment and de facto merger.
 

 We also note that it appears the asbestos plaintiffs suing Western MacArthur could have proceeded against the dissolved Western Asbestos, possibly triggering coverage under petitioners’ policies to the extent their injuries were caused by Western Asbestos’ products. Although
 
 Kaminski, supra,
 
 175 Cal.App.3d 445 imposed successor liability in tort on Western MacArthur in part because its takeover of Western Asbestos rendered it difficult for plaintiffs to proceed against that company and its erstwhile assets, there remained the remedy of a direct proceeding against Western Asbestos and the consequent pursuit of liability coverage, to the extent available. “[I]f [a] corporation has liability insurance coverage, its dissolution provides no reason to excuse the insurer from defending [an] action and indemnifying those injured by the predissolution activities of its insured. . . .”
 
 (Peñasquitos, Inc.
 
 v.
 
 Superior Court, supra,
 
 53 Cal.3d at p. 1192; see Corp. Code, § 2010.)
 

 III. Disposition
 

 Let a peremptory writ of mandate issue commanding respondent superior court to vacate its order denying summary judgment on the issue of policy transfer by operation of law, and to proceed further to determine the merits of the summary judgment motion on the sole issues of express assignment of policies and de facto merger. Each party shall pay its own costs of this writ proceeding.
 

 Peterson, P. J., and Haning, J., concurred.
 

 A petition for a rehearing was denied July 21, 1997, and the petition of real party in interest for review by the Supreme Court was denied September 24, 1997. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.
 

 [1]
 

 “Western [Asbestos] formally dissolved in 1969.”
 
 (Kaminski, supra,
 
 175 Cal.App.3d at p. 453.)
 

 [2]
 

 Apparently, there is some dispute over whether the policies were in fact issued. Petitioners styled their summary judgment motion as if they conceded the policies were issued for purposes of the motion.
 

 [3]
 

 The facts are simplified down to their essence, eliminating various corporate name changes not pertinent to this discussion.
 

 [4]
 

 After this persuasive reading of
 
 Oliver Machinery,
 
 the
 
 Quemetco
 
 majority set forth several other rationales for its holding. We do not necessarily espouse or agree with any of these various alternative rationales; we believe them to be dicta. In the case at bench the superior court distinguished
 
 Quemetco
 
 based solely on one of the items of dicta. We do not believe
 
 Quemetco
 
 can be distinguished on its essential facts or on its holding.
 

 [5]
 

 We note that
 
 Northern Ins.'s
 
 holding regarding the transfer of insurance coverage has only been unambiguously followed in one decision, an opinion of the United States District Court for the Western District of Washington. That district court is within the Ninth Circuit, and was bound by the decision.
 
 (B.S.B. Diversified Co.
 
 v.
 
 American Motorists Ins.
 
 (W.D.Wash. 1996) 947 F.Supp. 1476; but see
 
 Total Waste Management
 
 v.
 
 Commercial Union Ins. Co., supra,
 
 857 F.Supp. at p. 152 [district court, in denying summary judgment on numerous grounds including whether there was corporate successor liability, noted that
 
 Northern Ins.
 
 was “persuasive authority”].)
 

 The other authorities relied on by the superior court in its order do not support that court’s conclusion that Western Asbestos’ insurance coverage transferred to Western MacArthur by operation of law.
 
 Peñasquitos, Inc.
 
 v.
 
 Superior Court
 
 (1991) 53 Cal.3d 1180 [283 Cal.Rptr. 135, 812 P.2d 154], only supports the conclusion that the insurer of a dissolved corporation can still be liable on the corporation’s policies in an action against the dissolved corporation itself. Here we deal with lawsuits against a corporate successor to a dissolved corporation. Insurance Code section 11580 and
 
 Hand
 
 v.
 
 Farmers Ins. Exchange
 
 (1994) 23 Cal.App.4th 1847 [29 Cal.Rptr.2d 258], provide that an insurer of a judgment debtor has certain duties toward the judgment creditor, and that the creditor may sue the judgment debtor’s insurer for breach of the covenant of good faith.