STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2021 CA 1471

BRILLIANT NATIONAL SERVICES, INC.

VERSUS

THE TRAVELERS INDEMNITY COMPANY AND LEXINGTON
INSURANCE COMPANY

JUDGMENT RENDERED: **SEP 0 7 2022**

* * * * * * *

Appealed from
The Nineteenth Judicial District Court
Parish of East Baton Rouge • State of Louisiana
Docket Number 656,308 • Section 24

The Honorable Donald Johnson, Presiding Judge

* * * * * * *

James K. Ordeneaux
Scott H. Mason
G. Bruce Parkerson
New Orleans, Louisiana

COUNSEL FOR APPELLANT
PLAINTIFF/DEFENDANT-IN-
RECONVENTION—Brilliant
National Services, Inc.

Amy S. Malish
Maura Z. Pelleteri
New Orleans, Louisiana

COUNSEL FOR APPELLANTS
DEFENDANTS-IN-
RECONVENTION—Brilliant
National Services, Inc. and
Coastal Chemical Company,
LLC

Jonathan B. Womack
Paul M. Wellons
New Orleans, Louisiana

COUNSEL FOR APPELLEE
DEFENDANT/PLAINTIFF-IN-
RECONVENTION—Lexington
Insurance Company

* * * * * * *

BEFORE: MCCLENDON, WELCH, AND THERIOT, JJ.

**WELCH, J.**

In this insurance coverage dispute, the plaintiff, Brilliant National Services, Inc. ("Brilliant"), appeals a summary judgment rendered in favor of the defendant, Lexington Insurance Company ("Lexington"), which dismissed all of Brilliant's claims against Lexington with prejudice and declared that Lexington has no duty to defend or indemnify Coastal Chemical Company, LLC ("CCC, LLC"). We affirm.

In a related appeal—2021 CA 1472—Brilliant and CCC, LLC challenge the summary judgment rendered in favor of The Travelers Indemnity Company, The Charter Oak Fire Insurance Company, The Phoenix Insurance Company, and United States Fidelity and Guaranty Company—which dismissed all of Brilliant's claims against the Travelers companies with prejudice and declared they had no duty to provide insurance coverage to Brilliant or CCC, LLC under the policies at issue.

## FACTS AND PROCEDURAL HISTORY

Brilliant filed suit against Lexington (among other defendants), seeking contribution for the costs of defending CCC, LLC in a number of asbestos-exposure personal injury lawsuits filed in various state courts in Louisiana, beginning in 2011. Brilliant alleged that Lexington issued a general liability insurance policy to its insureds for the period of August 20, 1986, through August 20, 1987 ("Lexington policy"). Brilliant alleged that certain plaintiffs in the asbestos lawsuits claimed that CCC, LLC was the successor to an insured entity under the Lexington policy that was alleged to have manufactured, distributed, marketed, or sold asbestos-containing products. Brilliant claimed that if CCC, LLC was found to be the successor to an insured entity under that Lexington policy, then the insured entity's rights under the policy transferred to CCC, LLC by operation of law. Brilliant further alleged that regardless of whether CCC, LLC was the successor of an entity insured under the policy, Lexington owed CCC,

2

LLC a duty to defend based on the allegations raised in the asbestos lawsuits and the terms and conditions of the Lexington policy. Accordingly, Brilliant sought declaratory judgment that Lexington owed a duty to defend CCC, LLC in the asbestos lawsuits. Brilliant also sought judgment in its favor and against Lexington for 1/7 of all attorney's fees and costs paid by Brilliant in defense of CCC, LLC in the asbestos lawsuits, together with legal interest, costs, and all other relief to which Brilliant may be entitled.

In response, Lexington filed a peremptory exception of no right of action, arguing that Brilliant had no right to raise a claim under the Lexington policy. Following a hearing, the trial court overruled the exception. Thereafter, Lexington answered, raising numerous affirmative defenses, and filed a reconventional demand against Brilliant and CCC, LLC. In its reconventional demand, Lexington sought a declaration that it owed no duty to defend, indemnify, or provide any benefit to Brilliant or CCC, LLC under the Lexington policy.[1]

Lexington moved for summary judgment, seeking a judgment in its favor declaring that CCC, LLC has no rights under the Lexington policy; dismissing the claims asserted by Brilliant; and awarding judgment in favor of Lexington on its reconventional demand against Brilliant and CCC, LLC. Brilliant and CCC, LLC opposed the motion.[2]

Following a hearing, the trial court took the matter under advisement and ordered the parties to submit post-hearing proposed findings of fact, burdens of proof, conclusions of law, and a proposed judgment.

In a judgment signed on October 7, 2020, the trial court granted Lexington's motion for summary judgment; dismissed all of Brilliant's claims against

---

[1] Brilliant and CCC, LLC answered Lexington's reconventional demand, raising a dilatory exception of prematurity and affirmative defenses.

[2] The trial court granted Brilliant and CCC, LLC's *ex parte* motion to file their memorandum and exhibits in opposition under seal.

3

Lexington with prejudice; and declared that Lexington has no duty to defend or indemnify CCC, LLC. The trial court adopted Lexington's proposed findings of fact and conclusions of law as its reasons for judgment. Brilliant and CCC, LLC now appeal.[3]

## SUMMARY JUDGMENT ON INSURANCE COVERAGE

Whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be properly resolved within the framework of a motion for summary judgment. **George S. May Int'l Co. v. Arrowpoint Capital Corp.**, 2011-1865 (La. App. 1st Cir. 8/10/12), 97 So.3d 1167, 1171. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation under which coverage could be afforded when applied to the undisputed material facts shown by the evidence supporting the motion. **Smith v. Moreau**, 2017-0003 (La. App. 1st Cir. 6/2/17), 222 So.3d 761, 765. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and impose and enforce reasonable conditions upon the policy obligations they contractually assume. **Hickey v. Centenary Oyster House**, 97-1074 (La. 10/20/98), 719 So.2d 421, 425. An insurer seeking to avoid coverage through summary judgment bears the burden of proving some exclusion applies to preclude coverage. **Smith**, 222 So.3d at 765.

Appellate courts review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. **Guste v. Lirette**, 2017-1248 (La. App. 1st Cir. 6/4/18), 251 So.3d 1126, 1129. Where the facts are undisputed and the matter presents a purely legal question, summary judgment is appropriate. See **Landry v. Progressive Sec. Ins. Co.**, 2021-00621 (La. 1/28/22), ___ So.3d ___, ___, 2022 WL 263003, at *3.

---

[3] Brilliant and CCC, LLC filed a motion for devolutive appeal on December 10, 2020. The trial court signed an order of appeal on December 10, 2020, notice of which was transmitted by the Clerk of Court to the parties on December 11, 2020.

DISCUSSION

In their first assignment of error, Brilliant and CCC, LLC argue that the trial court erred in declaring that Lexington had no duty to defend or indemnify CCC, LLC in the asbestos lawsuits. In their related second assignment of error, the appellants argue that genuine issues of material fact exist as to whether CCC, LLC is the successor to Lexington's insured, *i.e.*, the entity that allegedly distributed the products at issue in the underlying asbestos lawsuits. The appellants argue these genuine issues of material fact should have precluded the trial court from granting summary judgment in Lexington's favor.

An insurer's duty to defend its insured arises solely under contract. **Arceneaux v. Amstar Corp.**, 2015-0588 (La. 9/7/16), 200 So.3d 277, 286. Generally, the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. **Yount v. Maisano**, 627 So.2d 148, 153 (La. 1993). An insurer's duty to defend its insured is determined by the allegations of the plaintiff's petition, with the insurer obligated to furnish a defense unless from the petition, it is clear the policy unambiguously excludes coverage. **Guste**, 251 So.3d at 1133. If, assuming the allegations of the petition are true, there is both coverage under the policy and liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. **Guste**, 251 So.3d at 1133. An insurer's duty to defend suits on behalf of an insured presents a separate and distinct inquiry from that of the insurer's duty to indemnify a covered claim after judgment against the insured in the underlying liability case. See **Elliott v. Cont'l Cas. Co.**, 2006-1505 (La. 2/22/07), 949 So.2d 1247, 1250.

## Lexington's Insureds

In moving for summary judgment, Lexington argued that it had no duty to defend or indemnify CCC, LLC, nor its subrogee, Brilliant, because CCC, LLC is not and has never been one of Lexington's "insureds." Lexington's evidence

submitted in support of its motion shows that Lexington issued policy number GL919-1272 to Coastal, Inc. and Coastal Chemical Co. The policy was effective from August 20, 1986, to August 20, 1987. The policy's "duty to defend" provision set forth:

I. COVERAGE A—BODILY INJURY LIABILITY
COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence, and **the company shall have the right and duty to defend any suit against the <u>insured</u> seeking damages** on account of such bodily injury or property damage, even if any of the allegations of this suit are groundless, false[,] or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

(Emphasis added). The Lexington policy defined "named insured" as:

"named insured" means the person or organization named in Item 1 of the declarations of this policy[.]

Item 1 of the policy lists the "named insured" as Coastal, Inc. and Coastal Chemical Co. The Lexington policy defined "insured" as:

"insured" means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage.

The Lexington policy defined "Persons Insured" as:

II. PERSONS INSURED
Each of the following is an insured under this insurance to the extent set forth below[:]
(a) if the named insured is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the named insured with respect to the conduct of such a business;
(b) if the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated[,] and any partner or

6

member thereof[,] but only with respect to his liability as such;

(c) if the named insured is designated in the declarations as other than an individual, partnership[,] or joint venture, the organization so designated[,] and any executive officer, director[,] or stockholder thereof while acting within the scope of this duties as such;

(d) any person (other than an employee of the named insured) or organization while acting as real estate manager for the named insured; and

(e) with respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law....

Coastal, Inc. and Coastal Chemical Co. were the "Persons Insured" under the Lexington Policy. The parties do not dispute that the Lexington policy expired prior to the formation of CCC, LLC's predecessor, the second Coastal Chemical Co., Inc., which was incorporated on December 8, 1987. Because neither CCC, LLC nor its predecessor was a party to the Lexington policy, CCC, LLC cannot be a "named insured" under the Lexington policy. Furthermore, neither CCC, LLC nor its predecessor falls into the definition of "Persons Insured" under the Lexington Policy.

## Successor Liability

Lexington argued next that CCC, LLC could only be entitled to defense and indemnity under the Lexington policy if CCC, LLC or its predecessor acquired the named insureds'—Coastal, Inc. or Coastal Chemical Co.—rights and interests in the Lexington policy. Lexington argues that its policy has never been transferred to CCC, LLC or its predecessor. In 1987, Coastal Chemical Co., Inc. acquired the chemical distribution business of Lexington's insured, Coastal, Inc. Lexington submitted evidence showing that Brilliant and CCC, LLC identified the 1987 asset transfer agreement as the only documents through which the Lexington policy could have been conveyed, sold, or otherwise transferred from Lexington's insured to Coastal Chemical Co., Inc. The 1987 asset transfer agreement documents

7

submitted by Lexington in support of its motion shows a list of transferred assets; however, the Lexington policy is not listed nor referenced in the asset transfer agreement. Lexington avers that because its policy was not transferred from its insureds to Coastal Chemical Co., Inc. in the 1987 asset transfer agreement, CCC, LLC never acquired the policy nor any rights thereunder from its predecessor. Accordingly, Lexington argues it has no obligation to defend or indemnify CCC, LLC or its subrogee, Brilliant.

The following facts are pertinent to the issue of successor liability. The company alleged to have distributed the asbestos-containing products in the asbestos lawsuits was incorporated in 1958 as the first "Coastal Chemical Co., Inc." In 1974, Coastal Chemical Co., Inc. amended its charter to change its corporation's name to "Coastal, Inc." In 1987, a new corporation named "Coastal Chemical Co., Inc." was incorporated. In December 1987, the newly incorporated Coastal Chemical Co., Inc. acquired the chemical distribution business of Coastal, Inc. (*i.e.*, all usable inventory), which was transferred from Coastal, Inc. to Coastal Chemical Co., Inc. in a 1987 asset transfer agreement. The Lexington policy was not included in and not acquired by Coastal Chemical Co., Inc. in the 1987 asset transfer. Coastal, Inc. remained in business and continued to operate after the 1987 asset transfer. In 2010, Coastal, Inc. merged with Coastal of Abbeville, LLC. In 2015, Coastal of Abbeville, LLC declared bankruptcy, and its assets were liquidated in bankruptcy proceedings. Coastal Chemical Co., Inc. later merged with CCC, LLC.

The 1987 asset transfer agreement provided, in pertinent part:

> 1. Coastal Chemical Company, Inc. offers to acquire the list of assets outlined in Attachment A....
>
> 2. Coastal, Inc. will keep all assets not listed in Attachment A.

8

> 3. Coastal Chemical Company, Inc. will not assume any liabilities known or unknown prior to close of business midnight December 31, 1987.

Louisiana Civil Code article 1821 provides that one person's assumption of the obligation of another must be in writing to be enforceable against third parties. The Civil Code further provides that a person who assumes, by agreement, the obligation of another "is bound only to the extent of his assumption." La. C.C. art. 1822. Applying this law to the above-quoted language of the 1987 asset transfer agreement, it is undisputable that Coastal Chemical Co., Inc. did not assume any of the liabilities or obligations of Coastal, Inc. when Coastal Chemical Co., Inc. purchased certain assets of Coastal, Inc. in the 1987 asset transfer.

Despite this, appellants argue in opposition that because certain plaintiffs in the underlying asbestos lawsuits alleged that CCC, LLC is the successor to Coastal, Inc., Lexington owes CCC, LLC a duty to defend, irrespective of whether the allegations of successor liability are ultimately proven, or whether the plaintiffs prevail.[4] Even though CCC, LLC expressly denies that it is Coastal, Inc.'s successor, the appellants argue that the plaintiffs in the asbestos lawsuits would have to establish CCC, LLC's successor liability in order to recover. Regardless of whether the plaintiffs prevail, the appellants contend that Lexington owes CCC, LLC a duty to defend based on the asbestos plaintiffs' allegations.

The basic principle of corporate successor liability was set forth by the United States Supreme Court in **Golden State Bottling Co., Inc. v. National Labor Relations Board**:

> [T]he general rule of corporate liability is that, when a corporation sells all of its assets to another, the latter is not responsible for the seller's debts or liabilities, except where (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) the purchaser is merely a

---

[4] Brilliant and CCC, LLC state that in the underlying asbestos lawsuits, the courts never resolved the issue of which entity succeeded to Coastal, Inc.'s liabilities and that all but one of the underlying asbestos lawsuits has been dismissed.

continuation of the selling corporation; or (3) the transaction is entered into to escape liability.

414 U.S. 168, 182 n.5, 94 S.Ct. 414, 424, 38 L.Ed.2d 388 (1973).  Louisiana Courts have followed this general rule of corporate successor liability.  **J.D. Fields & Co. v. Nottingham Const. Co., LLC**, 2015-0723 (La. App. 1st Cir. 11/9/15), 184 So.3d 99, 102.

Herein, the key consideration is whether the successor is in fact a "continuation" of the predecessor.  See **J.D. Fields & Co.**, 184 So.3d at 103. Brilliant and CCC, LLC point out that certain asbestos plaintiffs alleged that CCC, LLC is a "continuation" of Coastal, Inc. and its former division, Coastal Chemical Co.  The extent to which a predecessor and a successor have common shareholders, directors, officers, or even employees are pertinent considerations. Further, prior business relationships should be considered, as should the continuity of the identity of the business in the eyes of the public.  **J.D. Fields & Co.**, 184 So.3d at 103.  However, the threshold requirement to trigger a determination of whether successor liability is applicable under the "continuation" exception is that one corporation must have purchased all or substantially all the assets of another. **J.D. Fields & Co.**, 184 So.3d at 103 (citing **Pichon v. Asbestos Defendants**, 2010-0570 (La. App. 4th Cir. 11/17/10), 52 So.3d 240, 244, writ denied, 2010-2771 (La. 2/4/11), 57 So.3d 317).  In the instant case, CCC, LLC admits that Coastal Chemical Co., Inc. did not purchase all the assets of Coastal, Inc., only all the assets "necessary to operate a chemical distribution business."  There is no dispute that Coastal, Inc. retained assets and remained in business after the 1987 asset transfer.

The appellants argue that summary judgment was improper because there are genuine issues of material fact as to whether CCC, LLC is the successor to Coastal, Inc.; however, there is no actual dispute on the issue of successor liability.

CCC, LLC admits that the Lexington policy was not among the assets transferred from Lexington's insured to CCC, LLC's predecessor in the 1987 asset transfer agreement. There are no allegations in the underlying asbestos lawsuits that CCC, LLC's predecessor acquired all of Coastal, Inc.'s assets and liabilities. Finally, CCC, LLC has expressly and repeatedly denied that CCC, LLC is the successor to Coastal, Inc.

The asbestos plaintiffs' allegations that CCC, LLC is the successor to Coastal, Inc. are legal conclusions, not factual allegations. Any legal conclusions regarding successor liability are irrelevant to any determination of Lexington's defense obligation. It is well settled that allegations of fact contained in a petition, and not the conclusions, determine the obligation to defend. **Henly v. Phillips Abita Lumber Co.**, 2006-1856 (La. App. 1st Cir. 10/3/07), 971 So.2d 1104, 1114.

**"Coverage Follows Liability"**

Brilliant and CCC, LLC further argue that under the theory of "coverage follows liability," the right to recover under an insurance policy transfers by operation of law when the liability for which the coverage is sought also transfers by operation of law. "The right to recover under an insurance policy follows the liability that the insurer underwrote." See **P.R. Mallory & Co., Inc. v. Am. States Ins. Co.**, No. 54C01-0005-CP-00156 (Ind. Cir. Ct. July 29, 2004), 2004 WL 1737489, at *5 (unpublished) (citing **Northern Insurance Co. of New York v. Allied Mut. Ins. Co.**, 955 F.2d 1353, 1357 (9th Cir. 1992) ("the right to indemnity arising from [the policy] transferred together with the potential liability. This right to indemnity followed the liability rather than the policy itself")). We note, however, that the **Northern Insurance** case from which this theory of "coverage follows liability" derives may no longer be good law.[5]

---

[5] See **Axis Reinsurance Co. v. Telekenex, Inc.**, 913 F.Supp.2d 793, 808 (N.D. Cal. 2012). Subsequent decisions by California state courts raise questions as to the validity of the **Northern Insurance** rule, even in California. At least one California court of appeals has rejected outright

As noted by Lexington, the "coverage follows liability" theory has never been adopted in Louisiana.[6]  Louisiana law is clear that liabilities do not automatically transfer, but must be in writing.  La. C.C. art. 1821.  Successor liability does not entitle a successor, by operation of law, to the insurance coverage of its predecessor in Louisiana.  Any person alleging that CCC, LLC assumed Coastal, Inc.'s delictual obligations must demonstrate that the assumption was in writing.  Courts must look to the contract itself to determine whether liabilities were transferred.[7] See La. C.C. art. 1821; **J.D. Fields & Co.**, 184 So.3d at 102.

As stated previously, the 1987 asset transfer agreement excluded the Lexington policy from the list of assets acquired by CCC, LLC's predecessor from Lexington's insured.  To conclude that CCC, LLC acquired the Lexington policy, we would have to ignore the parties' contract.[8]

---

the **Northern Insurance** rule.  See **Gen. Accident Ins. Co. v. Superior Ct.**, 55 Cal. App. 4th 1444, 1454, 64 Cal. Rptr. 2d 781, 788 (1997).

[6] The U.S. Fifth Circuit Court of Appeals has also rejected the "coverage follows liability" theory in a case similar to the current matter, where a purchase agreement between two parties did not transfer a policy of insurance.  The Fifth Circuit noted that the purchase agreement specifically excluded the insurance policy from the asset transfer agreement, holding that the "parties clearly intended for the insurance coverage to remain with [the policyholder]." **Keller Foundations, Inc. v. Wausau Underwriters Ins. Co.**, 626 F.3d 871, 876-78 (5th Cir. 2010).

[7] Louisiana may enforce certain post-loss transfers of liability insurance, entitling the assignee to certain rights:

> There is no public policy in Louisiana which precludes an anti-assignment clause from applying to post-loss assignments. However, the language of the anti-assignment clause must clearly and unambiguously express that it applies to post-loss assignments. Thus, it is necessary for the federal district court to evaluate the relevant anti-assignment clauses on a policy-by-policy basis to determine whether the language is sufficient to prohibit post-loss assignments.

**In re Katrina Canal Breaches Litig.**, 2010-1823 (La. 5/10/11), 63 So.3d 955, 964.

[8] In support of the "coverage follows liability" theory, the appellants cite to **AMEC Constr. Mgmt., Inc. v. Fireman's Fund Ins. Co.**, No. CIV.A. 13-718-JJB (M.D. La. May 9, 2014), 2014 WL 1875264 (unpublished).  In **AMEC**, the insurer filed a Fed. R. Civ. P. 12(b)(6) motion, seeking a dismissal of an alleged successor entity's complaint for "failure to state a claim upon which relief can be granted," which is similar to an exception of no cause of action in Louisiana state courts.  The federal district court found that the complaint alleged facts sufficient to show that successor liability may exist under the corporate successor liability "continuation" exception, and that the alleged successor entity may be able to establish that its alleged predecessor's insurer may have a duty to defend and indemnify under the policy at issue.  **AMEC Constr. Mgmt., Inc.**, 2014 WL 1875264, at *3.  The appellants mischaracterize the **AMEC** case, however, by claiming that the federal district court held that rights under a liability policy transfer by operation of law.  The **AMEC** court merely denied an insurer's Fed. R. Civ. P.

## "Eight-Corners Rule"

Brilliant and CCC, LLC argue that based on the "eight-corners rule," the allegations of the petitions in the underlying asbestos lawsuits and the terms of the Lexington policy determine whether Lexington owes CCC, LLC a duty to defend. The plaintiffs in the underlying asbestos lawsuits alleged they were exposed to asbestos-containing products that were supplied and distributed by CCC, LLC during the time period when Lexington's policy was issued to Coastal, Inc. and Coastal Chemical Co. Overlapping with successor liability issues, certain asbestos plaintiffs alleged that CCC, LLC is the successor to Coastal, Inc. Accepting the asbestos plaintiffs' allegations as true, CCC, LLC would be liable for conduct that took place during the effective dates of the Lexington policy. In contrast, Lexington argues that there are no allegations against CCC, LLC in the underlying asbestos lawsuits that trigger coverage under the Lexington policy. Lexington contends that the appellants cannot point to any factual allegations made by the plaintiffs in the underlying asbestos lawsuits which, if assumed true, transforms CCC, LLC into a "Persons Insured" under the Lexington policy.

Referred to as the "eight-corners rule" by our Supreme Court in **American Home Assurance Co. v. Czarniecki**, 230 So.2d 253, 259 (La. 1969), an insurer must look to the four corners of the petition and the four corners of the policy to determine whether it has a duty to defend. **Vaughn v. Franklin**, 2000-0291 (La. App. 1st Cir. 3/28/01), 785 So.2d 79, 84, writ denied, 2001-1551 (La. 10/5/01), 798 So. 2d 969. Cases applying the "eight-corners rule" hold that an insurer owes a duty to defend if, assuming the factual allegations are true, there would be both (1) coverage under the policy, and (2) liability to the plaintiff. **Maldonado v. Kiewit Louisiana Co.**, 2013-0756 (La. App. 1st Cir. 3/24/14), 146 So.3d 210, 218-19.

---

12(b)(6) motion. The court did not make any substantive holding on the "coverage follows liability" theory, nor on an insurer's duty to defend.

13

When making this analysis, the allegations of the petition are liberally interpreted in determining whether they set forth grounds that bring the claims within the scope of the insurer's duty to defend. An insurer's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. Although the allegations of the petition may ultimately turn out to be incorrect or untrue, the insurer is still obligated to provide a defense. **Vaughn**, 785 So.2d at 84. If, however, a petition does not allege facts within the scope of coverage, an insurer is not required to defend a suit against its insured. **Guste**, 251 So.3d at 1134.

Even though the asbestos plaintiffs allege that CCC, LLC "negligently and defectively designed, manufactured, marketed, distributed, supplied, sold and used" the "asbestos products," those allegations do not trigger coverage under the four corners of the Lexington policy. The pertinent Lexington policy provision clearly defines "Persons Insured" and includes only specific individuals.[9] None of

---

[9] The Lexington policy defined "named insured" as:

> "named insured" means the person or organization named in Item 1 of the declarations of this policy.

Item 1 of the policy lists the "named insured" as Coastal, Inc. and Coastal Chemical Co. The Lexington policy defined "insured" as:

> "insured" means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage.

The Lexington policy defined "Persons Insured" as:

> II. PERSONS INSURED
> Each of the following is an insured under this insurance to the extent set forth below[:]
> (a) if the named insured is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the named insured with respect to the conduct of such a business;
> (b) if the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated[,] and any partner or member thereof[,] but only with respect to his liability as such;
> (c) if the named insured is designated in the declarations as other than an individual, partnership[,] or joint venture, the organization so designated[,] and any executive officer, director[,] or stockholder thereof while acting within the scope of his duties as such;
> (d) any person (other than an employee of the named insured) or organization while acting as real estate manager for the named insured; and

the asbestos plaintiffs' allegations could, even if proven, transform CCC, LLC into an individual defined as a "Persons Insured" under the Lexington Policy—*i.e.*, an executive officer, director, or stockholder of the "named insured" Coastal, Inc. or Coastal Chemical Co.

## DECREE

For the reasons discussed herein, we affirm the trial court's October 7, 2020 judgment. All costs of this appeal are assessed against the appellants, Brilliant National Services Inc. and Coastal Chemical Company, LLC.

**AFFIRMED.**

---

(e) with respect to the operation, for the purpose of locomotion upon a public highway, or mobile equipment registered under any motor vehicle registration law....